# CHARLESTON.

## STATE *v.* ALER.

Submitted September 13, 1894—Decided December 1, 1894.

1. CRIMINAL PROCEEDINGS—RECORD—SIMILITER.

In a criminal case the record must show the defendant's plea of not guilty, without which there can be no valid conviction; but the omission of the *similiter* or joinder by the prosecuting officer is, at most, a mere formal defect, at any time amenable, and it does not render the record bad.

2. CRIMINAL PROCEEDINGS—PLEADING—SLANDER—LIBEL — INNUENDO.

It is an elementary rule of pleading that whatever is alleged must be alleged with certainty, and one of the means of insuring certainty in a complaint 'or indictment for slander or libel is innuendo.

3. CRIMINAL PROCEEDINGS—PLEADING—SLANDER—LIBEL—INNU-
    ENDO.

    An innuendo may serve for an explanation to point a meaning
where there is precedent matter expressed or necessarily under-
stood or known, but never to establish a new charge.

D. B. LUCAS for appellant cited 30 W. Va. 305; 20 W.
Va. 777; 35 W. Va. 280, p't 5, Syll.; 3 Ired. 177; 91
U. S. 225; 114 Pa. St. 554; 16 W. Va. 555; 12 W. Va.
505; Code, c. 125, s. 25; 3 Chitt. Pl. 1144*; 33 W. Va.
319; Steph. Pl. 57, 237; 3 Bl Comm. 307; Whar. Cr. L.
§ 530; Town. Lib. § 337; 13 W. Va. 71; 16 Wend. 10; 2
Saund. Pl. and Ev. 799; 3 Johns. 220*; 2 Den. 297; 16
Wend. 16–19.

ATTORNEY-GENERAL T. S. RILEY for the state cited 2 Va.
527; 13 W. Va. 852; 23 W. Va. 773; 20 W. Va. 770; 16
W. Va. 555; 12 W. Va. 505; Code, c. 125, s. 25.

U. S. G. PITZER for the state cited 2 Arch. Cr. Pr. 317; 1
Bish. Cr. Pr. 645; 3 Gr. Ev. § 176; Id. 177; 13 W. Va.
96, 82, 205, 209; 16 Gratt. 80; 5 Tenn. 211; 23 Am. Rep.
798; Const. Art. IV., s. 8; 4 Rob. Pr. 733; 17 Gratt. 255;
2 Sand. P. & E. 900, 902; 10 Leigh, 261; 2 Bish. Cr. L. §
930; 2 Whar. Pr. Ind. 939; 3 Gr. Ev. § 174, 175; Id. 166;
2 Bish. Cr. Proc. 783, 785, 791, 793, 794.

ENGLISH, JUDGE:

On the 11th day of January, 1893, the grand jury of
Berkeley county returned an indictment against F. Vernon
Aler for libel, which is in the words and figures following,
to wit:

"State of West Virginia, Berkeley County.

"In the Circuit Court of said County, January Term,
1893."

The grand jury of the state of West Virginia, in and for
the body of the county of Berkeley, and now attending the
said court, upon their oaths present: That, before the
commission of the offence hereinafter mentioned, one
John Taliaferro, on the 14th day of August, A. D. one
thousand eight hundred and seventy four, was lawfully in-
carcerated and held in the county jail of Berkeley county,

upon the criminal charge of having murdered one Annie Butler; and that in the night time of said 14th day of August, A. D. one thousand eight hundred and seventy four, a mob of unknown persons, then and there, without due process of law, did take said John Taliaferro from said jail in said county, and unlawfully and feloniously hang him, until he, the said John Taliaferro, was dead; and that said unknown persons, constituting said mob, were then and are still unknown, and were not and have not been arrested and punished for the aforesaid felonious hanging; and that various persons, unlawfully and maliciously contriving and intending to vilify and defame one· George E. Evans, have falsely intimated and charged him with abetting and aiding in the aforesaid lynching of the said John Taliaferro ; and that on the 24th day of October, A. D. one thousand eight hundred and ninety two, F. Vernon Aler, of the said county of Berkeley, was the proprietor and publisher of a newspaper in Martinsburg, county aforesaid, called and known as 'The World.' That said F. Vernon Aler, in an article and writing published by him in said newspaper, unlawfully and maliciously contriving to injure and vilify one George F. Evans, and to bring said George F. Evans into public scandal, contempt, ridicule, and disgrace, then and there, to wit, on the said 24th day of October, A. D. 1892, at Martinsburg, in Berkeley county, aforesaid, did publish in said newspaper aforesaid, called 'The World,' and circulated in said county, a false, scandalous, malicious, and defamatory libel of and concerning the said George F. Evans, containing divers false, scandalous, malicious, and defamatory matters and things of and concerning the said George F. Evans, of the tenor following, to wit:

" 'Saturday morning, Justice Wm. McKee's office was the scene of an unusual occurrence in the history of Berkeley county. The back or adjoining room to the main office was selected by Mr. George W. Feidt, prosecuting attorney of Berkeley county, and Mr. George F. Evans, an ex-officer of Judge Lynch's court (meaning that said George F. Evans had aided and abetted in the unlawful hanging of aforesaid John Taliaferro) for the purpose

of devising some plan or scheme to counteract the effect of Edward Murphy's sworn statement with the general public, which was published in last Thursday's World. It was then agreed that Evans should swear out a warrant for Murphy's arrest at once, charging him with perjury, before Squire McKee, at the hearing some time prior to the term of the Circuit Court. Murphy was immediately arrested, and arraigned before Squire McKee. The editor of the World was sent for, · who immediately went to Murphy's assistance. Upon inquiry, the latter did not know what he had been arrested for. The complainant demanded a trial at once, which would have been altogether bad for Murphy, as he had received no notice whatever, and had no time for preparation. The defence then waived a hearing temporarily, and, after the squire · placing the amount of the bond at the highest possible figure allowed by law, Murphy was remanded to jail.'

"And in certain other part of which said newspaper article, writing, and publication there were and are contained certain false, wicked, malicious, scandalous, defamatory, and libelous matter of and concerning said George F. Evans, to the tenor and effect following, to wit:

"'Why did he (meaning the said George F. Evans) resort · to this action, and what can be his object? The only answer any reasonable person can make is that he (meaning said George F. Evans) fears trouble, and wants to get Murphy out of the way. But we will say here: "Mr. Evans, you escaped an indictment at the last grand jury, but you are not yet through. The next one, which will convene on the second Tuesday in January, 1893, will find before it five witnesses, placed there by the World, who will make oath that you instructed and commanded Cornelius Vency to do the shooting. Now is your time to do your fighting, as your chances will be slim, and, furthermore, additional counsel will assist in a legitimate and just prosecution of your case. You (meaning said George F. Evans) might carry out Judge Lynch's laws (meaning that said George F. Evans had violated the law by hanging said John Taliaferro) and be protected by him in the hanging of negroes (meaning that said George F. Evans had been guilty of

but escaped punishment for, the hanging of said John
Taliaferro, and that said George F. Evans had been and is
guilty of feloniously and unlawfully hanging said John
Taliaferro and other negroes) but this time the net will be
woven somewhat close, and will unravel in a court of jus-
tice, before the eyes of an injured public " '—to the great
scandal, injury, and disgrace of the said George F. Evans,
against the peace and dignity of the state.   Upon the in-
formation of George F. Evans, sworn in open court, and
sent to the grand jury to give evidence on this indictment.
U. S. G. Pitzer, Prosecuting Attorney."

On the 31st day of January, 1893, the defendant, F.
Vernon Aler, appeared and demurred to the indictment;
also pleaded not guilty to the charge in the indictment;
and entered plea in justification; and the case was con-
tinued.   On the 13th day of May, 1893, the demurrer to
the indictment was considered by the court and overruled.
The case was continued by successive orders until the 10th
day of October, 1893, when the defendant asked leave to
withdraw his pleas theretofore entered in the case, which
leave was granted; and thereupon the defendant moved
the court to quash said indictment, which motion was over-
ruled, whereupon the defendant moved the court that the
prosecution be required to give security for costs, which
motion was overruled, and the defendant pleaded not
guilty as charged in the indictment; and thereupon the
case was submitted to a jury, who found the defendant
guilty as charged in the indictment; whereupon the de-
fendant, by his attorney, in arrest of judgment, moved the
court to set aside the verdict, and grant him a new trial,
which motion was overruled, and the defendant, by his at-
torney, excepted; and thereupon the court gave judgment
upon said verdict, and sentenced the defendant to pay a
fine of thirty dollars and gave judgment for that amount
against him and costs, and the defendant applied for and
obtained this writ of error.

The first error assigned and relied upon is that there is
no record of any such indictment being found by the
grand jury.   This assignment, however, was made before
there was a suggestion of a diminution of the record; and,

when the record was completed by *certiorari*, it was found that the order had been casually omitted which showed the finding of the indictment; and, as matter of course, the assignment was not well taken.

The second error assigned is that there is no replication to the defendant's plea, and hence petitioner was tried without any issue being made up. Upon this question, Gould, in his admirable work on Pleading, on page 290 § 20, says: "Whenever one of the parties concludes to the country, and thus refers the trial to the jury, the issue is joined and made ready for trial by the opposite party's adding: 'And the said A. B. or C. D. does the like.'" This addition, which, from its concluding word, is called the "*similiter*," merely expresses the concurrence of the party to whom the issue is tendered with his adversary in referring the trial to the jury. It is, however, in strictness, no part of the pleadings, since it neither affirms nor denies any fact in maintenance of the action or the defence. The *similiter* should therefore seem on principle to be only matter of form, and as such the omission of it would seem to be aided by verdict; and so it has determined in the states of Connecticut and Massachusetts.

In the case of *Babcock* v. *Huntington*, 2 Day, 392, which was an action of libel, it was held that, "after a trial to the jury on the plea of not guilty and a verdict for the plaintiff, the omission of the *similiter* is not a sufficient ground of arrest."

So in the case of *Whiting* v. *Cochran*, 9 Mass. 532, the court said: "The plaintiff in error has assigned for error that no issue was joined in the original action, but the record before says otherwise, and we are bound by the record. If, however, it were true that the plaintiff below had neglected to join the issues tendered, and had gone to trial, and the defendant had appeared and defended the action before the jury, the verdict would have been good, and the judgment been supported."

In the case of *Bank* v. *Kimberlands*, 16 W. Va. 555, this Court held that, "if a plea concludes to the country as *non assumpsit* or payment, the plaintiff may, without the for-

mal addition of the *similiter*, proceed to trial as though the issue had been formally joined; but, if the plea concludes with a verification, the plaintiff must reply thereto before the case can be tried by the jury."

Bishop, in his work on Criminal Procedure, at section 1354, says: "The record must show the defendant's plea of not guilty, without which there can be no valid conviction. But, by the better opinion, the omission of the *similiter* or joinder by the prosecuting officer is, at most, a mere formal defect, at any time amenable, and it does not render the record bad." And at section 801 the author says: "There can be no trial upon the merits without a plea of not guilty. This plea ought in strictness to be followed by a joinder of issue. * * * Some courts hold that the omission of such joinder is fatal to record, but by the better opinion it is not." As supporting the same doctrine, see *Henry* v. *State*, 33 Ala. 390; also; *Com.* v. *McCauley*, 105 Mass. 69. See, also, Bish. Cr. Law, § 1029, where the author says: "The plea commonly put in at the arraignment is an essential part of the proceedings, so that, until an indicted person has pleaded, he is not in jeopardy, though a jury has been sworn to try him, or even though there has been an actual trial. But the *similiter* appears not to be essential."

In view of these authorities, my conclusion is that the want of a *similiter* is not such error as would render the record bad, or reverse the cause.

The next error relied upon is that "the indictment is insufficient, and that it was error not to quash the same; that it is uncertain, both as to the person supposed to have been libeled, and as to the nature of the libel itself, the words set out in said indictment being too remote and equivocal to be aided by an innuendo or connected therewith."

Is the indictment uncertain as to the person supposed to have been libeled? The *colloquium* or inducement recites the facts that John Taliaferro, on the 14th day of August, 1874, was confined in the jail of Berkeley county on the criminal charge of having murdered Annie Butler; and that, on the night of said day, a mob of unknown persons, without due process of law, did take said John Taliaferro

from said jail in said county, and unlawfully and feloniously hang him until he was dead ; and that the unknown persons constituting said mob were then and still are unknown, and were not and have not been arrested and punished for the said felonious hanging; and that various persons unlawfully and maliciously contriving to vilify and defame one George F. Evans have falsely intimated and charged him with abetting the aforesaid lynching of the said John Taliaferro ; and on the 24th day of October, 1892, F. Vernon Aler, of the said county of Berkeley, was the proprietor and publisher of a newspaper in Martinsburg in said county called and known as "The World"; that said F. Vernon Aler, in an article and writing published by him in said newspaper, unlawfully and maliciously contriving to injure and vilify one George F. Evans, and bring said George F. Evans into public scandal, contempt, ridicule, and disgrace, did then and there, to wit, on the 24th day of October, 1892, at Martinsburg, in Berkeley county, aforesaid, publish in said newspaper aforesaid, called "The World," a false, scandalous, malicious, and defamatory libel of and concerning said George F. Evans, containing divers false, scandalous, malicious, and defamatory matters and things of and concerning said George F. Evans, of the tenor following, to wit:     setting forth the words contained in said newspaper article.

It is claimed in argument that the words used neither charge an offence, nor do they expose the prosecutor to any kind of ridicule, and were not calculated in the slightest degree to prejudice or injure the prosecutor.     Now, it is recited in the inducement that various persons unlawfully and maliciously intending to vilify and defame said George F. Evans, have charged him with aiding and abetting said lynching of John Taliaferro ;· and it is claimed that, because the innuendo does not charge that the defendant had knowledge of such malicious allegations by third parties, therefore the language of the article published was not libelous, and in fact has no meaning.     The object of the statement made in the inducement was to show what had transpired in that immediate locality, to wit, that John Taliaferro had been hung by a mob, and various malicious

persons had charged George F. Evans with aiding and abetting said mob, so as to show the relevancy of the newspaper article to these circumstances; and when it is stated by way of inducement that these circumstances had transpired, and we read the newspaper article in the light of these circumstances, there can be no hesitancy in determining what was intended.

When said article is examined, it not only designates said George F. Evans as an ex-officer of Judge Lynch's court, but accuses him of conspiring with the prosecuting attorney of Berkeley county for the purpose of devising some plan or scheme to counteract the effect of one Edward Murphy's sworn statement with the general public which had been published in said newspaper, and says that it was then agreed that said Evans should swear out a warrant for Murphy's arrest at once, charging him with perjury before Squire McKee at the hearing some time prior to the term of the Circuit Court, and that said Murphy was immediately arrested, *etc.* And in the same article the question was asked: "Why did he (meaning said George F. Evans) resort to this action, and what can be his object?" "The only answer any reasonable person can make is that he fears trouble, and wants to get Murphy out of the way. But we will say here: ' Mr. Evans, you escaped an indictment at the last grand jury, but you are not yet through.' " And while it does not appear what the sworn statement of said Murphy was, and what it contained, yet the accusation is plain and clear that he (George F. Evans) conspired with the prosecuting attorney of Berkeley county to have said Murphy arrested and spirited away, in order to prevent an indictment against himself. The article, however, proceeds: "Now is your time (addressing said George F. Evans) to do your fighting, as your chances will be slim; and, furthermore, additional counsel will assist in a legitimate and just prosecution of your case"—plainly intimating that now was his time to do his fighting by getting rid of the witnesses, and that he would be prosecuted. What for? The answer to this question is indicated in the closing words of said article: "You (meaning George F. Evans) might carry out Judge Lynch's laws, and be pro-

tected by him in the hanging of negroes, but this time the net will be woven somewhat close, and will unravel in a court of justice, before the eyes of an injured public." The plain inference from this language is that he was to be prosecuted under section 30 of chapter 147 of the Code, for intimidating or impeding the witness Murphy from the discharge of his duty as a witness against him.

But returning to the other clause, " You might carry out Judge Lynch's laws, and be protected by him in the hanging of negroes," and, whether it applies to the hanging of John Taliaferro by the mob, as detailed in the inducement, it is a plain intimation that said Evans was capable of engaging in such an unlawful proceeding. To be accused of being an ex-officer of Judge Lynch's court, without any innuendo or explanatory note, has no uncertain meaning. The reputation of Judge Lynch may be said to be national, and, while his judgments lack deliberation, his executions are sure and swift. His reputation is anything but enviable, and to be accused of being an ex-officer of his court through the medium of the public newspapers would have a direct tendency to a breach of the peace.

Bishop on Criminal Law (volume 2, § 907) says a libel is any representation in writing or by pictures, effigies, or the like calculated to create disturbance of the peace, *etc.;* and looking to the derivation of the words " Lynch Law," we find in Anderson's Dictionary of Law the definition of the words as follows : " The action of private individuals, organized bodies of men, or disorderly mobs, who, without legal authority, punish, by hanging or otherwise, real or suspected criminals without trial according to the forms of law."

American lexicographers refer the origin of the term to the practice in the seventeenth century of a Virginia farmer named Lynch, who during the War of Independence was presiding justice of the county court of Pittsylvania, Va. The court in that state for the trial of felonies sat at Williamsburg, two hundred miles distant. Horse thieves who had established posts from the north, through Virginia, into North Carolina, were frequently arrested and remanded to

to Williamsburg for trial. Not only was the attendance of witnesses at that distance rendered uncertain, but when they did appear, they were sure to be confronted by false witnesses for the outlaws. Moreover, the difficulty of conveying the accused to Williamsburg was increased, and the sitting of the court made uncertain, by the presence of the British under Cornwallis. Accordingly, the justices of the county court of Pittsylvania assembled, and Judge Lynch proposed that since for Pittsylvania the court at Williamsburg had practically ceased to exist, and, in consequence, heinous crimes went unpunished, the court over which he presided should try all felonies commited in the county ; that is to say the place of trial was to be changed by mere resolution. The plan was adopted with good results; the thieves were disbanded, many being hanged, which was the lawful penalty. The change of forum was against the words of the law, but justified, Lynch and others held, by the circumstances.

Bouvier defines " Lynch Law " as " a common phrase, used to express the vengeance of a mob inflicting an injury and committing an outrage upon a person suspected of some offence;" and Webster defines "Lynch Law" thus : " The act or practice by private persons of inflicting punishment for crimes or offences without due process of law" —all of which definitions seem to concur in defining " Lynch Law " as something done without the warrant or sanction of law. Lynch law and Judge Lynch are so well defined and so well understood that there is nothing in the contention of counsel that the demurrer should have been sustained because there was nothing in the inducement stating who Judge Lynch was, or what was understood by his court. Words and expressions so well known must be taken in their ordinary acceptation.

It is also contended by counsel that it is nowhere averred that the public or community knew of the charge which various persons made against Evans, and without such public knowledge there was no injury and no libel. Now, the averment that various persons, unlawfully and maliciously contriving and intending to vilify and defame one George F. Evans, have falsely intimated and charged him

with abetting and aiding in the aforesaid lynching of the said John Taliaferro, occurs in the colloquium or inducement, and the parties that made these charges are not proceeded against for libel, and, whether the public knew of the charges or not, those to whom the charges were made knew of them.

What is intended to be stated and is stated by way of inducement is that John Taliaferro, on the night of August 14, 1874, had, without due process of law, been taken from the jail of Berkeley county, and hung until he was dead, and that various persons, unlawfully and maliciously intending to vilify and defame said George F. Evans, charged him with aiding and abetting in the aforesaid lynching; and this is inserted in the indictment as explanatory of the meaning of the publication which appeared in the World. This shows the intent and meaning of the expression, "Mr. George F. Evans, an ex-officer of Judge Lynch's court," which would have been definite enough without any "innuendo," taken, as it must be, in connection with the inducement; but, when the innuendo is added that said George F. Evans had aided and abetted in the unlawful hanging of said John Taliaferro, there can be no doubt that the averment is sufficiently definite.

Townshend on Slander and Libel (section 335) says: "It is an elementary rule of pleading that whatever is alleged must be alleged with certainty; and one of the means of insuring certainty in a complaint or indictment for slander or libel is an innuendo. * * * The office of an innuendo is to aver the meaning of the language published." And applying this definition to other portions of the indictment where innuendoes appear, although it is true, as stated in Townshend on Slander and Libel (page 565) that an innuendo "may serve for an explanation, to point a meaning where there is precedent matter, expressed or necessarily understood or known, but never to establish a new charge."

Our conclusion is that the pleader in this instance has not violated the rule, and the court below committed no error in overruling the demurrer, and the judgment complained of is affirmed with costs, *etc.*