485 S.E.2d 391

Martin GREENFIELD, Plaintiff Below, Appellant,

v.

SCHMIDT BAKING COMPANY, INC., John F. Morrison and Dennis Swartz, Defendants Below, Appellees.

No. 23574.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 4, 1997.

Decided March 19, 1997.

**450**

Lawrence M. Schultz, Burke & Schultz, Martinsburg, for Appellant.

Wm. Richard McCune, Jr., Tammy Mitchell Bittorf, McCune & Bittorf, Martinsburg, for Appellees.

DAVIS, Justice:

The appellant, Martin Greenfield, plaintiff below, appeals an award of summary judgment in favor of the appellees, Schmidt Baking Company, Inc., John F. Morrison and Dennis Schwartz, in an action claiming defamation/libel, invasion of privacy and intentional infliction of emotional distress. Greenfield contends the circuit court erred in finding that the resolution of his causes of action required interpretation of a collective bargaining agreement governing his employment relationship with Schmidt Baking Company, Inc., and his claims were, therefore, pre-empted by federal law under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1947) (1994 ed.). We agree. We find that all three of Greenfield's claims may be resolved without interpretation of the collective bargaining agreement. Consequently, they are not pre-empted.

## I.

### FACTUAL BACKGROUND

At the time of the event complained of, the appellant, Martin Greenfield [hereinafter Greenfield], was employed by Schmidt Baking Co., Inc. [hereinafter Schmidt Baking], at its plant in Martinsburg, West Virginia. Greenfield was also a member of Local No. 68, Bakery, Confectionery and Tobacco Workers International Union, A.F.L.–C.I.O., C.L.C. [hereinafter Union].[1] Consequently, the employment relationship between Greenfield and Schmidt Baking was governed by a Collective Bargaining Agreement [hereinafter CBA].

In early 1995, the Union filed a grievance regarding the eligibility of part–time employees for sick pay benefits under the CBA. John F. Morrison, Vice President of Industrial Relations for Schmidt Baking, responded to the grievance by letter dated March 14, 1995. Dennis Schwartz, Manager of Schmidt Baking's Martinsburg plant, posted the letter near the time clock in the Martinsburg plant.[2] In the letter, Mr. Morrison

---

1. The record before us does not indicate whether Greenfield is still a member of the Union. However, that fact is not pertinent to our resolution of this case.

2. This was a location commonly used to post notices to employees, the Union and Union members. Greenfield contends, and the appellees do not dispute, that the letter was at a location

first stated the company's position that part-time employees were eligible to collect sick pay benefits. The letter continued by providing statistics regarding the high cost to the company of the "use and abuse of the sick pay program." The letter further named seven employees, including Greenfield, who management had identified as "recipients of sick pay benefits on a habitual basis." The letter then stated "[t]he Company will pursue an investigation of the aforementioned individuals and others not named in an attempt to detect abuse of the sick pay program. If such abuse/fraud is detected, disciplinary action will be taken up to and including termination of employment." Finally, the letter expressed the company's position that it could not afford to operate the Martinsburg plant under the burdensome financial conditions caused, in part, by excessive sick pay claims, and, thus, the company would pursue the elimination of sick pay benefits in future labor negotiations.

Shortly after the posting of the letter, Greenfield filed a grievance protesting the portion of the letter indicating that he was a habitual user of sick pay benefits.[3] Greenfield subsequently abandoned the grievance. On April 5, 1995, he filed the instant lawsuit against Schmidt, Mr. Morrison and Mr. Schwartz [hereinafter collectively referred to as Schmidt]. Schmidt made no attempt to remove the action to federal court. However, on May 31, 1995, Schmidt filed a motion for summary judgment asserting that Greenfield's claims implicated the CBA and were, therefore, pre-empted by federal law under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1947) (1994 ed.). The circuit court determined that "the sum and substance of plaintiff's claims boil down to two questions: (1) was the posting of the letter with the reference to the plaintiff a

reasonable response to the grievance that was filed; and (2) whether the identification of plaintiff was a reasonable exercise of the Company's authority to discipline or discharge employees." The court concluded that the answer to both questions required interpretation of the CBA, and, thus, the case was pre-empted by federal law.[4] Consequently, by order dated November 9, 1995, the Circuit Court of Berkeley County granted summary judgment in favor of Schmidt. It is from this order Greenfield appeals.

## II.

### STANDARD OF REVIEW

We are asked to review the circuit court's award of summary judgment in favor of Schmidt. On appeal, " '[a] circuit court's entry of summary judgment is reviewed *de novo*.' Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *Davis v. Foley*, 193 W.Va. 595, 457 S.E.2d 532 (1995).

We have repeatedly held that under Rule 56(c) of the West Virginia Rules of Civil Procedure, " ' "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. pt. 1, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). Moreover, we have explained that:

Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil

---

where non-union member employees and others, such as persons making deliveries to the plant, could and did read its contents.

3. Greenfield suffers from hypertension. He asserts that within a few days of reading the letter he was admitted to the hospital due to dangerously high blood pressure, and he has since been unable to return to work.

4. The court found that resolution of the first question required interpretation of Article 10 of

the CBA, which is related to settlement of grievances and arbitration. In addition, the court found that interpretation of Article 9, pertaining to discipline, would be required in resolving the second question. With regard to the employer's power to discharge and discipline under Article 9, the court commented "[t]he controlling language the [c]ourt deems significant is: '[i]t is agreed that this power shall be exercised [with] justice and with regard [for the] reasonable rights of the employees.' "

Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. pt. 5, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995).

Finally, "[i]n determining on review whether there is a genuine issue of material fact between the parties, this Court will construe the facts 'in a light most favorable to the losing party,' *Masinter v. WEBCO Co.,* 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980)." *Alpine Prop. Owners Ass'n., Inc. v. Mountaintop Dev. Co.,* 179 W.Va. 12, 17, 365 S.E.2d 57, 62 (1987). See also W. Va. R. Civ. P. 56(c).

## III.

### § 301 PRE–EMPTION

The issue we are asked to address is whether Greenfield's state-law tort claims for defamation, invasion of privacy and intentional infliction of emotional distress are preempted by § 301(a) of the Labor Management Relations Act [hereinafter § 301], which states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. 185(a) (1947) (1994 ed.).

■ The Supreme Court of the United States, in *Textile Workers Union v. Lincoln Mills,* concluded that "the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972, 980 (1957). The Supreme Court has subsequently explained that "[*Lincoln Mills*] understood § 301 as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206, 214 (1985). Despite the applicability of federal law, the Court determined, after deciding *Lincoln Mills,* that § 301(a) does not divest state courts of jurisdiction over suits for violation of a CBA. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). Rather, state courts have concurrent jurisdiction over such claims. *Id.*

The Supreme Court of the United States first addressed the pre-emptive effect of § 301 in *Teamsters v. Lucas Flour Co.,* wherein the Court explained that the substantive principles of federal labor law must be paramount in the area covered by § 301 so that such cases are decided under a uniform law rather than under inconsistent local rules. 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593, 599 (1962). The *Lucas Flour* Court explained further that the possibility that the same contract term might be interpreted differently under different laws would complicate the negotiation and administration of collective bargaining agreements because parties to such agreements would be uncertain of the rights for which they bargained. *Id.* at 103, 82 S.Ct. at 577, 7 L.Ed.2d at 599.[5] Consequently, the *Lucas Flour* Court held that in disputes alleging a violation of a labor contract "incompatible doctrines of local law must give way to principles of federal labor law." *Id.* at 102, 82 S.Ct. at 576, 7 L.Ed.2d at 598.

---

**5.** The Court commented:

Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract.

*Id.* at 103, 82 S.Ct. at 577, 7 L.Ed.2d at 599.

The Court later expanded its *Lucas Flour* holding in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The *Allis–Chalmers* Court explained, "[i]f the policies that animate § 301 are to be given their proper range, ... the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." *Id.* at 210, 105 S.Ct. at 1911, 85 L.Ed.2d at 215. The Court stated further:

> The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

*Id.* at 211, 105 S.Ct. at 1911, 85 L.Ed.2d at 215.

The *Allis–Chalmers* Court then held "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, ... or dismissed as pre-empted by federal labor-contract law." *Id.* at 220, 105 S.Ct. at 1916, 85 L.Ed.2d at 211, (citation omitted).

**6.** In *Allis–Chalmers,* an employee/union member filed suit in a Wisconsin state court against his employer alleging a state-law action for bad-faith handling of an insurance claim. The insurance policy was negotiated as part of a CBA. The CBA established a grievance procedure for employee contract grievances, and also contained a provision allowing a specified committee to resolve disputes involving " 'any insurance-related issues that may arise.' " *Allis–Chalmers,* at 215, 105 S.Ct. at 1913, 85 L.Ed.2d at 218. On appeal, the Supreme Court of the United States concluded that the Wisconsin Supreme Court erred in finding that state law was not pre-empted. The

After reaching the conclusion that the state court claim in *Allis–Chalmers* was pre-empted, the Supreme Court emphasized the narrow focus of its holding by explaining that it did not hold "that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301. The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." *Id.*[6]

The Supreme Court further clarified the pre-emptive effect of § 301 in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The *Caterpillar* Court addressed, in part, the question of whether a state-law claim was pre-empted when an employer raised a defense that required interpretation of a CBA. The Court, answering that question in the negative, stated:

> [T]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.... [A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

*Id.* at 398–99, 107 S.Ct. at 2433, 96 L.Ed.2d at 331.

Supreme Court observed that the Wisconsin Court "held that the 'specific violation of the labor contract, if there was one, is irrelevant to the issue of whether the defendants exercised bad faith in the manner in which they handled Lueck's claim.' " *Allis–Chalmers* at 214, 105 S.Ct. at 1912–13, 85 L.Ed.2d at 217 (citation omitted). The Supreme Court explained that this statement was based on the assumption that the labor contract created no implied rights, which was an assumption the state court had no authority to make under state law. *Allis–Chalmers* at 214–15, 105 S.Ct. at 1913, 85 L.Ed.2d at 217–18.

The Supreme Court also addressed § 301 pre-emption in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In *Lingle,* an employee who was covered by a CBA was discharged shortly after filing a worker's compensation claim. The employee filed a grievance and won reinstatement with full back pay. She also filed a civil action claiming she was discharged in retaliation for exercising her rights under the state worker's compensation laws. The District Court and the Court of Appeals found the claim was pre-empted by § 301 because the CBA contained a remedy for discharge without just cause. The Court of Appeals reasoned that " 'the just cause provision in the collective-bargaining agreement may well prohibit such retaliatory discharge,' . . . [and, thus,] if the state-law cause of action could go forward, 'a state court would be deciding precisely the *same issue* as would an arbitrator: whether there was "just cause" to discharge the worker.' " *Id.* at 408, 108 S.Ct. at 1882–83, 100 L.Ed.2d at 420. The Supreme Court rejected this reasoning and found that "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409–10, 108 S.Ct. at 1883, 100 L.Ed.2d at 421.[7] The Court concluded by reiterating the test that "an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." *Id.* at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423.

■ This Court previously has reviewed United States Supreme Court precedent with regard to § 301 pre-emption and recognized that "preemption of state law does not occur every time a collective bargaining agreement forms the basis of a state law claim, but rather, ' "*only* if such application requires the *interpretation* of a collective bargaining agreement." ' [*Lowe v. Imperial Colliery Co.*], 180 W.Va. [518, 524], 377 S.E.2d [652], 658 [ (1988) ]. (Emphasis added)." *Ash v. Ravens Metal Products, Inc.,* 190 W.Va. 90, 95, 437 S.E.2d 254, 259 (1993). With regard to the present case, we have examined numerous decisions involving § 301 pre-emption from various state and federal jurisdictions, and we conclude that a determination of pre-emption under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1947) (1994 ed.), requires a fact specific analysis. We cannot say, for example, that all defamation claims are or are not pre-empted, because a review of the specific facts of each case is necessary to determine whether interpretation of a CBA will be required to resolve each claim. We believe this view is in accord with United States Supreme Court precedent. *See Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. at 1916, 85 L.Ed.2d at 221 ("The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis.").[8]

---

**7.** The Supreme Court also explained that the result it reached in *Lingle* was "consistent both with the policy of fostering uniform, certain adjudication of disputes over the meaning of [CBA's] and with cases that have permitted separate fonts of substantive rights to remain unpre-empted by other federal labor-law statutes." *Id.* at 410–11, 108 S.Ct. at 1884, 100 L.Ed.2d at 422. The Court noted although there are " 'strong policies encouraging arbitration, "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." ' " *Id.* at 412, 108 S.Ct. at 1884, 100 L.Ed.2d at 422, (citations omitted). While the case *sub judice* does not involve a statute that provides minimum substantive guarantees, the basic test of *Allis–Chalmers* and *Lingle* applies.

**8.** We note particularly that several United States Circuit Courts of Appeal, including the Fourth Circuit, have found causes of action for defamation, invasion of privacy or intentional infliction of emotional distress were pre-empted under one set of factual circumstances, yet, when faced with different factual circumstances, the same courts found similar claims were not pre-empted. *See, e.g., Jackson v. Kimel,* 992 F.2d 1318 (4th Cir.1993) (finding intentional infliction of emotional distress that resulted from quid pro quo sexual harassment was not pre-empted because CBA could not lawfully authorize such complaint); *Willis v. Reynolds Metals Co.,* 840 F.2d 254 (4th Cir.1988) (concluding intentional infliction of emotional distress claim was pre-empted). *See also, DeCoe v. General Motors Corp.,* 32 F.3d 212 (6th Cir.1994) (intentional infliction of emotional distress pre-empted); *O'Shea v. Detroit*

We now proceed to a review of each of Greenfield's tort claims, with due consideration of the facts viewed in a light most favorable to Greenfield, to determine whether his claims are pre-empted by § 301.

## IV.

### STATE COURT CLAIMS

#### A.

#### Defamation/Libel

**1. Elements of Defamation/Libel**

 We begin our analysis with a discussion of the necessary elements of a defamation action for libel.

Under West Virginia law, a libel plaintiff's status sets the standard for assessing the defendant's conduct. Plaintiffs who are public officials or public figures must prove by clear and convincing evidence that the defendants made their defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not. Private figures need only show that the defendants were negligent in publishing the false and defamatory statement.

Syl. pt. 2, *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 480 S.E.2d 548 (1996). There appears to be no dispute that Greenfield is a private figure. We previously set forth the elements of a defamation action by a private individual:

"The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury."

*Rand v. Miller*, 185 W.Va. 705, 708–09, 408 S.E.2d 655, 658–59 (1991) (quoting Syl. pt. 1, *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1983)). Defamation published in written form, as opposed to spoken form, constitutes libel. 12A Michie's Jur., *Libel and Slander* § 2 (1989).

 The first element of a defamation action is a defamatory statement. We do not believe that a determination of whether the comments contained in the Schmidt's letter were defamatory requires interpretation of the CBA in this case. We have explained that " '[a] statement may be described as defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." ' Restatement (Second) of Torts § 559 (1977)[.]" *Rand v. Miller*, at 709, 408 S.E.2d at 659 (quoting *Crump*, 173 W.Va. at 706, 320 S.E.2d at 77) (emphasis omitted; footnote omitted). Thus, to determine whether the comments contained in the letter were defamatory, a trier of fact must consider how such comments would be viewed by the community or third persons. Clearly, such a

*News*, 887 F.2d 683 (6th Cir.1989) (intentional infliction of emotional distress not pre-empted); *Matter of Amoco Petroleum Additives Co.*, 964 F.2d 706 (7th Cir.1992) (invasion of privacy and intentional infliction of emotional distress pre-empted); *Keehr v. Consolidated Freightways of Delaware, Inc.*, 825 F.2d 133 (7th Cir.1987) (defamation, invasion of privacy and intentional infliction of emotional distress not pre-empted); *Luecke v. Schnucks Markets, Inc.*, 85 F.3d 356 (8th Cir.1996)(defamation not pre-empted), *cert. denied,* — U.S. ——, 117 S.Ct. 517, 136 L.Ed.2d 405 (1996); *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620 (8th Cir.1989) (defamation pre-empted); *Milne Employees Ass'n. v. Sun Carriers*, 960 F.2d 1401 (9th Cir.1991) (one claim for intentional infliction of emotional distress pre-empted; second emotional distress claim not pre-empted), *cert. denied,* 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993); *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083 (9th Cir.1991) (one claim for intentional infliction of emotional distress pre-empted; second emotional distress claim not pre-empted); *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057 (9th Cir.1989) (defamation and intentional infliction of emotional distress pre-empted); *Tellez v. Pacific Gas and Elec. Co., Inc.*, 817 F.2d 536 (9th Cir.1987) (defamation and intentional infliction of emotional distress not pre-empted), *cert. denied,* 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987); *Albertson's, Inc. v. Carrigan*, 982 F.2d 1478 (10th Cir.1993) (intentional infliction of emotional distress not pre-empted); *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015 (10th Cir.1990) (intentional infliction of emotional distress pre-empted); *Lightning v. Roadway Exp., Inc.*, 60 F.3d 1551 (11th Cir., 1995) (intentional infliction of emotional distress not pre-empted); *Redmond v. Dresser Industries, Inc.*, 734 F.2d 633 (11th Cir., 1984) (intentional infliction of emotional distress pre-empted).

determination does not require an interpretation of the CBA.

The second element is a nonprivileged communication to a third party. The complaint alleges that the letter was published to numerous third parties in the absence of a privilege. In his brief, Greenfield alleges that the letter was viewed not only by union members, but also by non-union employees and non-employee delivery personnel. Schmidt argues that it has, at a minimum, a qualified privilege to communicate with the Union and its membership.[9]

■ We have held that:

Qualified privileges are based upon the public policy that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public. A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter; however, a bad motive will defeat a qualified privilege defense.

Syl. pt. 4, *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 445 S.E.2d 219 (1994). Publication of a statement by an employer to union members or union officials may be subject to a qualified privilege under the above quoted standard. In *Barbe v. Great Atlantic & Pacific Tea Co., Inc.*, 722 F.Supp. 1257, 1261–1262 (D.Md.1989), *aff'd mem.*, 940 F.2d 651 (4th Cir.1991), *cert. denied*, 502 U.S. 1059, 112 S.Ct. 939, 117 L.Ed.2d 109 (1992), the United States District Court for the District of Maryland found that resolving an employer's privilege defense would require interpretation of a CBA to determine the relative interests in the communication of the union, the employer and the employee. In *Barbe*, however, the communication involved a termination letter, copies of which were

sent to two supervisors and the local union. The circumstances in this case are much different. Here, Greenfield alleges that the statement was published to individuals who were not members of the union and, in addition, to individuals who were not even employed by Schmidt. Thus, a determination of whether such individuals have a legitimate interest in the subject matter of the communication does not require interpretation of the CBA.

The third element of a successful defamation action is falsity. Greenfield alleges that the statement that he was a "recipient[ ] of sick pay benefits on a habitual basis" implied falsely, to those who read it, that he was a malingerer. Greenfield submits that the proof of the falsity of this statement will come from Schmidt's files and from Greenfield's medical records. Conversely, Schmidt argues that the communication "suggests a pattern use of the sick pay program which may be possibly inconsistent with or even prohibited by the sick pay plan in the [CBA]." Thus, Schmidt continues, it is unclear whether the phrase has any meaning independent of the CBA.

### 2. General Considerations

■ We agree with Greenfield that the phrase "recipient[ ] of sick pay benefits on a habitual basis," as used in Schmidt's letter, implies that such recipient is a malingerer. Moreover, such an implication is actionable in West Virginia. "Direct defamatory statements are not an absolute prerequisite to recovery, however, because defamation may also be accomplished through inference, implication, innuendo or insinuation. *See State v. Aler*, 39 W.Va. 549, 20 S.E. 585 (1894); *Johnson v. Brown*, 13 W.Va. 71 (1878); *see also Neal v. Huntington Pub. Co.*, 159 W.Va. 556, 223 S.E.2d 792, 796 (1976)." *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 706, 320 S.E.2d 70, 77 (1983). The term

---

9. Schmidt implies, but does not argue, that it may have an absolute privilege with regard to the complained of communication. It has been recognized by some courts that "statements made in grievance proceedings are unqualifiedly, or absolutely, privileged. *Hasten v. Phillips Petroleum Co.*, 640 F.2d 274, 278 (10th Cir.1981); *General Motors Corp. v. Mendicki*, 367 F.2d 66, 70 (10th Cir.1966); *Brooks v. Solomon Co.*, 542 F.Supp. 1229 (N.D.Ala.1982)." *Hull v. Central Transport, Inc.*, 628 F.Supp. 784, 791 (N.D.Ind.1986). However, the communication in the instant case was not made during a grievance proceeding. Thus, we need not discuss the applicability of a qualified privilege.

malingerer, in the context of using sick pay benefits, is generally understood to signify one who abuses such benefits by using them when he or she is fully able to perform his or her work duties, i.e. one who fakes an illness to avoid work.[10] In other words, a malingerer utilizes sick leave benefits as paid vacation days used for leisure and enjoyment. We find that the determination of whether Greenfield abused sick leave benefits in such a way does not require an interpretation of sick pay benefits provided by the CBA.

The extent to which it may be necessary to *consult* the CBA to determine what sick leave benefits were available does not, in our view, require pre-emption. *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93, 110 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413 n. 12, 108 S.Ct. 1877, 1885 n. 12, 100 L.Ed.2d 410, 423 n. 12 (1988) ("A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.... Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand." (citations omitted)); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206, 215 (1985) ("[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301."); *Luecke v. Schnucks Markets, Inc.*, 85 F.3d 356, 362 (8th Cir.1996) ("[W]hile the provisions of the collective-bargaining agreement will perhaps be 'consulted,' they need not be interpreted in order to

resolve any qualified privilege defense that [an employer] may raise in the state defamation proceeding."), *cert. denied*, —— U.S. ——, 117 S.Ct. 517, 136 L.Ed.2d 405 (1996).

The remaining elements of Greenfield's defamation claim include reference to the plaintiff, at least negligence on the part of the publisher, and resulting injury. Obviously, it is not necessary to interpret the CBA to resolve whether there was a reference to the plaintiff and whether he suffered injury from the alleged defamatory statement. Finally, with regard to the requirement of at least negligence on the part of the publisher, we have stated that "the conduct of the defendant is to be measured against what a reasonably prudent person would have done under the same or similar circumstances." *Crump*, 173 W.Va. at 706, 320 S.E.2d at 77 (citations omitted). The resolution of this common law standard does not require interpretation of the CBA. We are cognizant of Schmidt's argument that the reasonableness of its actions must be viewed in light of the existing circumstances, a crucial component of which is the CBA. However, we have reviewed the provisions of the CBA that Schmidt argues are implicated and find that none of them require interpretation for the resolution of this claim.

Schmidt argues that its management had the right to post notices to the Union membership, particularly when such notice was in response to a grievance, and, thus, Greenfield's claim implicates management's right to frankly address grievances. We disagree. Greenfield's cause of action does not challenge Schmidt's right to post notices to union membership. Rather, Greenfield's complaint alleges that Schmidt's specific comments about him were libelous, invaded his privacy and were an intentional infliction of emotional distress. The fact that the comments happened to be contained in a notice that, in part, responded to a grievance is of no mo-

---

**10.** *Webster's Third New International Dictionary of the English Language Unabridged*, 1367 (1970), defines malinger as: "to pretend to be ill or otherwise physically or mentally incapacitated so as to avoid duty or work ... [;] to deliberately induce, protract, or exaggerate actual illness or other incapacity so as to avoid duty or work." According to *Black's Law Dictionary*, 959 (6th ed.1990), malinger means "[t]o feign sickness or any physical disablement or mental lapse or derangement, especially for the purpose of escaping the performance of a task, duty, or work, or for purpose of continuing to receive disability payments. Person who consciously feigns or simulates mental or physical illness for gain."

ment to Greenfield's action. The grievance to which Schmidt was responding was a grievance by part-time employees regarding their eligibility for sick-pay benefits. Greenfield was neither a part-time employee, nor a party to the existing grievance. Thus, the specific comments about him were not in response to the grievance.

While we agree that Schmidt had a right to express to the union membership its concern with the high cost of the sick-pay program and its intention to pursue abuses of that program, we do not agree that the specific comments about Greenfield contained in the notice are, consequently, intertwined with the CBA such that his claims cannot be resolved without interpreting the CBA. Schmidt's concerns could have been expressed, in equally strong terms, along with an expression of its intent to pursue an investigation into the use and abuse of the sick pay program, without identifying Greenfield as a "recipient[ ] of sick pay benefits on a habitual basis." Thus, we find that under the specific factual circumstances of this case, where Greenfield's claims do not challenge any of Schmidt's rights or responsibilities under the CBA, it is not necessary to interpret the CBA to resolve such claims.

We similarly are unpersuaded by Schmidt's argument that it was exercising its rights under Article 9 of the CBA to discipline and discharge with justice and with regard for the reasonable rights of the employees. It is plain from the text of the letter that no disciplinary action had been taken against Greenfield and that Greenfield had not been discharged.[11]

Finally, we are not convinced by Schmidt's argument that the complained of letter falls within its implied right to investigate suspected misconduct, which arises from its right under the CBA to discipline or discharge, and, therefore, the CBA must be interpreted to resolve Greenfield's claims. We have reviewed the letter and, when viewed in the light most favorable to Greenfield, we believe it indicated that Schmidt intended to conduct an investigation, but the letter clearly was not part of any on-going investigation. Consequently, Greenfield's claims do not challenge Schmidt's right to investigate and do not require interpretation of the CBA for their resolution.[12]

■ Furthermore, although Schmidt may raise defenses which require an interpretation of the CBA, we conclude that such defenses are not sufficient for § 301 pre-emption. A state court may exercise concurrent jurisdiction over § 301 claims in such circumstances, but must apply federal law in interpreting the CBA. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). *Cf. Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) (holding state court had concurrent jurisdiction over § 301 claims).

Our view is in accord with the decisions of numerous courts finding, under the particular circumstances involved in each case, defamation actions were independent of the CBA, and, thus, were not pre-empted: *Luecke v. Schnucks Markets, Inc.*, 85 F.3d 356 (8th Cir.1996) (finding no pre-emption where no express or implied provision of CBA guides the factual inquiry into whether

---

**11.** The relevant portion of the letter stated "[t]he Company *will* pursue an investigation of the aforementioned individuals and others not named in an attempt to detect abuse of the sick pay program. *If* such abuse/fraud is detected, disciplinary action *will be* taken up to and including termination of employment." (Emphasis added).

**12.** Schmidt also commented in its brief that "[n]owhere is the interrelationship of these contractual provisions and Greenfield's claim made more clear than the fact that Greenfield filed a grievance over the posting of the letter within days of the actual posting, and sought a clear and definite remedy for what he then perceived to be the Company's overstepping of its rights provid-

ed for under the [CBA]." We note that United States Supreme Court precedent establishes that the filing of a grievance does not preclude a subsequent state-law action. The plaintiff in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), was discharged shortly after filing a worker's compensation claim. She filed a grievance and won reinstatement with full back pay. She also filed a civil action claiming she was discharged in retaliation for exercising her rights under state worker's compensation laws. On appeal, the United States Supreme Court found the claim for retaliatory discharge was not pre-empted. *Id.*

the speakers actually made malicious and false statements which resulted in damage to the plaintiff), *cert. denied,* —— U.S. ——, 117 S.Ct. 517, 136 L.Ed.2d 405 (1996); *Jackson v. Southern Cal. Gas Co.,* 881 F.2d 638 (9th Cir.1989) (holding that defamation claim was not pre-empted because California defamation law establishes nonnegotiable rights and obligations independent of any labor contract); *Keehr v. Consolidated Freightways of Delaware, Inc.,* 825 F.2d 133 (7th Cir. 1987) (finding that resolution of defamation claim in no way depended upon interpretation of CBA and was, therefore, not pre-empted; noting also that they employer did not suggest that plaintiff's claims were in any way derived from rights or duties provided for under CBA); *Tellez v. Pacific Gas and Elec. Co., Inc.,* 817 F.2d 536 (9th Cir. 1987) (holding that defamation claim was not pre-empted because California defamation law establishes nonnegotiable rights and obligations independent of any labor contract; concluding further that the CBA did not contain guidelines related to employer's notification of eleven company managers of plaintiff/employee's termination), *cert. denied,* 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987); *Lindemuth v. Goodyear Tire and Rubber Co.,* 19 Kan.App.2d 95, 864 P.2d 744 (1993) (determining that, because § 301 is designed to protect statements made during bargaining sessions and grievance proceedings, a defamation action based upon conduct that occurred prior to grievance procedure would not require interpretation of CBA; remanding for further proceed-ings); *Commodore v. University Mechanical Contr.,* 120 Wash.2d 120, 839 P.2d 314 (1992) (concluding that cause of action for defamation exists independent of any CBA in the common law of Washington, and, thus, is not pre-empted; commenting additionally that action for defamation was not pre-empted because defamatory statements were unrelated to an investigation, a grievance proceeding, or termination from employment); *Thompson v. Public Serv. Co.,* 800 P.2d 1299 (Colo.1990) (deciding that each element of defamation claim could be resolved without reference to CBA, therefore, claim was not pre-empted), *cert. denied,* 502 U.S. 973, 112 S.Ct. 452, 116 L.Ed.2d 469 (1991); *Reynolds Metals Co. v. Mays,* 547 So.2d 518 (Ala.1989) (finding none of the issues presented by defamation action required interpretation of the CBA, which was silent as to particular issues raised); *Krasinski v. United Parcel Serv., Inc.,* 124 Ill.2d 483, 125 Ill.Dec.. 310, 530 N.E.2d 468 (1988) (finding primary factual considerations arising from complaint were whether statements were false and whether they were made with actual malice and did not require interpretation of CBA).

We further recognize that some courts have reached the opposite result. However, unlike the instant case, the cases we reviewed finding § 301 pre-emption involved state-law claims: (1) asserted by an employee who was involved in a related discipline or discharge process;[13] (2) ensuing from an action taken by an employer that was *specifically* required by the CBA;[14] or (3) brought

---

**13.** *See, e.g., Barbe v. Great Atlantic & Pacific Tea Co., Inc.,* 722 F.Supp. 1257 (D.Md.1989) (finding that resolution of employer's privilege defense would require interpretation of the CBA to determine the relative interests in the communication of the union, the employer and the employee where the communication was published only to the employee, two supervisors and the local union), *aff'd mem.,* 940 F.2d 651 (4th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 939, 117 L.Ed.2d 109 (1992). *See also Johnson v. Anheuser Busch, Inc.,* 876 F.2d 620 (8th Cir.1989) (holding statements made during investigation and grievance procedure in accordance with employer's right to control workplace were privileged and defamation claim was pre-empted); *Willis v. Reynolds Metals,* 840 F.2d 254 (4th Cir.1988) (finding claim of defamation based on comments, made by an employer during meetings held *after* employer's investigation implicat-ed employee in harassment of another employee, was pre-empted because employer was exercising its right to control conditions in the workplace pursuant to the CBA); *Merchant v. CWA,* 145 L.R.R.M. (BNA) 2627, 1993 WL 475480 (E.D.La.1993) (recognizing that publication, which consisted of a letter notifying certain union and company officials of a settlement reached in a grievance, was inextricably intertwined with CBA grievance procedure).

**14.** *See, e.g., Shane v. Greyhound Lines, Inc.* 868 F.2d 1057 (9th Cir.1989) (involving workers who were discharged after an unsuccessful strike, the worker's claim presumably rested upon a "notice of intent to discipline" issued by the employer; the court observed that the CBA required employer to notify employees and the union, in writing, of intended disciplinary action; the court concluded, therefore, that any claim based

by an employee who was directly involved in the grievance.[15] As previously indicated, we believe determination of whether resolution of the state-law claim requires pre-emption depends upon the particular facts of each case. Under the facts before us, interpretation of the CBA is not necessary to resolve Greenfield's claims.

### B.

### *Invasion of Privacy*

Under West Virginia law, there are four types of invasion of privacy, any one of which may be the basis of a cause of action. "An 'invasion of privacy' includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. pt. 8, *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1983). Greenfield contends that Schmidt gave unreasonable

publicity to his private life and placed him in a false light before the public.[16]

With regard to this cause of action, Schmidt asserts substantially the same arguments discussed above: that a determination of the reasonableness of its actions requires consideration of its rights under the CBA; that Schmidt's management has the right to post notices to the Union membership, especially when responding to a grievance; that Schmidt was exercising its rights under Article 9 of the CBA to discipline and discharge with justice and regard for the reasonable rights of the employees; and that the complained of letter falls within Schmidt's implied right to investigate, which arises from its right under the CBA to discipline or discharge. For the reasons stated above, we find that none of these provisions of the CBA must be interpreted to resolve Greenfield's claim of invasion of privacy where, as here, Greenfield was not a party to the grievance of the part-time employees and was not being disciplined or discharged.[17]

on the discharge notification was inextricably intertwined with the CBA).

15. *See, e.g., Crawford v. TRW, Inc.*, 815 F.Supp. 1028 (E.D.Mich.1993) (concluding defamation claim based upon contents of grievance settlement notification was pre-empted because issues related to privilege required interpretation of CBA). Similar to the case *sub judice*, the publication in *Crawford* was a notice of a grievance settlement and explanatory letters that were posted on a company bulletin board. However, unlike the instant case, the grievance that resulted in the settlement notice upon which Crawford based his state-law claim directly involved him. Crawford was a union official who used his "superseniority" to bump another employee (who had greater actual seniority) to another shift. The bumped employee filed a grievance complaining that TRW had violated the CBA by granting superseniority to a union official (Crawford) where it did not apply. In the present case, the grievance was filed on behalf of part-time employees seeking sick pay benefits. Greenfield was not a part-time employee, and he was not in any manner involved in the grievance.

16. We recognize that "[t]he 'right of privacy' does not extend to communications which are privileged under the law of defamation; which concern public figures or matters of legitimate public interest; or which have been consented to by the plaintiff." Syl. pt. 9, *Crump*. As explained above, Greenfield claims that the alleged defamatory statement was published to individuals who were not members of the union and, in

addition, to individuals who were not employed by Schmidt. A determination of whether such individuals have a legitimate interest in the subject matter of the communication, in order to establish a privilege, does not require interpretation of the CBA.

17. *See, e.g., Blair v. Schott Scientific Glass Co.*, 945 F.Supp. 123 (S.D.W.Va.1996) (holding invasion of privacy claim was not pre-empted where employer published, in public places and often to employees who had no part in the collective bargaining process, details of plaintiff's medical records and drug/alcohol treatment, which employer obtained in meetings between labor and management; court observed that the employer failed to cite any provision of the CBA concerning its right to make public sensitive information discovered in the context of labor/management meetings). *See also Keehr v. Consolidated Freightways of Delaware, Inc.*, 825 F.2d 133 (7th Cir.1987) (finding that resolution of invasion of privacy claim in no way depended upon interpretation of CBA and was, therefore, not pre-empted; noting also that the employer did not suggest that plaintiff's claims were in any way derived from rights or duties provided for under CBA).

*But see, e.g., Willis v. Reynolds Metals*, 840 F.2d 254 (4th Cir.1988) (finding that claim of defamation based upon comments made by an employer during meetings held *after* employer's investigation implicated employee in harassment of another employee; court found the claim was pre-empted because employer was exercising its

As we also previously stated, any defenses raised by Schmidt that may require interpretation of the CBA may be resolved by the state court applying federal law. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). *Cf. Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) (holding state court had concurrent jurisdiction over § 301 claims).

## C.

### *Intentional infliction of Emotional Distress/Outrage*

■■■■ This court has previously observed that:

" 'One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for bodily harm.' Syllabus pt. 6, *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982)." Syl.Pt. 1, *Dzinglski v. Weirton Steel Corp.,* 191 W.Va. 278, 445 S.E.2d 219 (1994).

Syl. pt. 3, *Tanner v. Rite Aid of West Virginia, Inc.,* 194 W.Va. 643, 461 S.E.2d 149 (1995). Further, we have recognized that " '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." ' *Tanner* at 651, 461 S.E.2d at 157 (quoting *Restatement (Second) of Torts* § 46(1) cmt. d (1965)).

■■■■ Schmidt argues that this claim depends on the resolution of whether the content and posting of the letter was a reason-

able response to the grievance and whether identification of Greenfield was a reasonable exercise of Schmidt's express and implied rights under the CBA. Schmidt submits that an "actor is never liable[, for example,] where he has done no more than to insist upon his legal rights in a permissible way[,] even though he [is] well aware that such insistence was certain to cause emotional distress." *See Restatement (Second) of Torts* § 46 cmt. g (1965).

We reiterate, however, that the mere existence of a CBA between the parties is not sufficient to require pre-emption of a state-law claim. *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93, 110 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206, 215 (1985) ("[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301."). The question that must be asked, according to the standard established by the Supreme Court of the United States, is whether the application of state–law requires the interpretation of a CBA. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423. As explained above, none of the CBA provisions asserted by Schmidt are implicated by the specific factual circumstances of this case. Thus, we conclude that resolution of Greenfield's state–law claim for intentional infliction of emotional distress does not require interpretation of the CBA. It is not pre-empted.[18]

right to control conditions in the workplace pursuant to the CBA); *Kirby v. Allegheny Bev. Corp.,* 811 F.2d 253 (4th Cir.1987) (holding that employee's claim of invasion of privacy, which was founded upon the employer's conduct of accusing employee of illegal drug abuse and ordering the employee to submit to a body search, was pre-empted; court found that the availability of remedies under the labor contract precluded the employee's pursuit of those remedies under state law). Both of these cases involved a situation where the employer was actively engaged in dis-

ciplining the employee. Thus, they are distinguishable from the case *sub judice.*

See *supra* Section IV. A. 2. wherein we address and reject Schmidt's arguments for pre-emption of Greenfield's state-law claims.

**18.** *See, e.g., Keehr v. Consolidated Freightways of Delaware, Inc.,* 825 F.2d 133 (7th Cir.1987) (finding resolution of intentional infliction of emotional distress claim in no way depended upon interpretation of CBA where claim arose from derogatory comments supervisor made about

Schmidt relies, in part, on *McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531 (4th Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992). *McCormick* involved a claim of intentional infliction of emotional distress that arose after an AT & T supervisor disposed of the contents of McCormick's work locker following his discharge. Other AT & T employees retrieved from the garbage and read a personal letter addressed to McCormick that had been disposed of with the contents of his locker. Thereafter, McCormick was represented by the union in a meeting with AT & T and was reinstated. Upon McCormick's return to work, a co-employee made a personal comment regarding the letter, which apparently upset McCormick. On appeal from the United States District Court for the Eastern District of Virginia, the United States Circuit Court of Appeals for the Fourth Circuit, in a four-three decision, found that McCormick's claims were pre-empted. The court commented that a necessary element of each of McCormick's claims, including the claim of intentional infliction of emotional distress, was wrongful conduct by the employer. The court explained that such wrongfulness could not be determined in a vacuum, but required due consideration of the circumstances of each case. Concluding that the CBA was a critical component of the circumstances involved in McCormick's claims, the court de-termined that it would be necessary to interpret the CBA to ascertain AT & T's rights in order to ascertain whether it acted outrageously. Judge Phillips, writing for the dissent, suggested that the appropriate analytical technique is to look for the source of the duty allegedly breached. He opined that McCormick located the duty breached in Virginia tort law. Because the source of the duty was not the CBA, Judge Phillips reasoned, McCormick's claim was not pre-empted.

We believe that the circumstances in *McCormick* that implicated the CBA are not present in the instant action. The employee in *McCormick* had been terminated and had participated in a grievance proceeding regarding the discharge. Moreover, the employer's allegedly offensive conduct was directly related to the discharge. Here, no disciplinary action had been taken against Greenfield. Greenfield was in no way connected with the grievance of the part-time employees that resulted in the notice containing negative comments about him. While other cases have resulted in the conclusion that claims for intentional infliction of emotion distress were pre-empted by § 301, we believe they, like *McCormick*, may be distinguished on the basis that the employee instituting the action was somehow involved in a procedure that implicated a CBA.[19]

employee's wife; noting also that it was not suggested that plaintiff's claims were in any way derived from rights or duties provided for under CBA); *Tellez v. Pacific Gas and Elec. Co., Inc.*, 817 F.2d 536 (9th Cir.1987) (holding intentional infliction of emotional distress claim was not pre-empted where manager sent copies of letter suspending employee for allegedly buying cocaine from another employee to eleven supervisors because CBA did not envision extreme and outrageous behavior and was not equipped to redress it; court noted that the CBA was silent on work conditions and vague on disciplinary formalities), *cert. denied*, 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987); *Lindemuth v. Goodyear Tire and Rubber Co.*, 19 Kan.App.2d 95, 864 P.2d 744 (1993) (determining that § 301 is designed to protect statements made during bargaining sessions and grievance proceedings, and, thus, intentional infliction of emotional distress claim based upon conduct that occurred prior to grievance procedure would not be pre-empted; remanding for further proceedings); *Commodore v. University Mechanical Contr.*, 120 Wash.2d 120, 839 P.2d 314 (1992) (concluding that cause of action for outrage was not pre-empted where defendants failed to point to any specific terms of CBA requiring interpretation to resolve any element of outrage claim; commenting additionally that action was not pre-empted because it was independent (*i.e.* it could have been brought by an employee in the absence of a CBA)).

See *supra* Section IV. A. 2. wherein we address and reject Schmidt's arguments for pre-emption of Greenfield's state-law claims.

**19.** In *Barbe v. Great Atlantic & Pacific Tea Co., Inc.*, 722 F.Supp. 1257 (D.Md.1989), *aff'd mem.*, 940 F.2d 651 (4th Cir.1991), *cert. denied*, 502 U.S. 1059, 112 S.Ct. 939, 117 L.Ed.2d 109 (1992), the employee asserting a state law action had been discharged for "dishonest" conduct. The district court held that determination of whether the employer's termination of the employee was reckless, extreme or outrageous depended upon whether the employee's conduct was in violation of the CBA. Similarly, the plaintiff in *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620 (8th Cir.1989), had been terminated after he

## V.

### CONCLUSION

For the foregoing reasons, we conclude that, under the particular facts of this case, resolution of Greenfield's claims for defamation, invasion of privacy and intentional infliction of emotional distress does not require interpretation of the CBA. Consequently, such claims are not pre-empted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1947) (1994 ed.).[20] The November 9, 1995, order of the Circuit Court of Berkeley County, granting summary judgment in favor of Schmidt, is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

was accused of slashing the tires of a co-employee's automobile. The United States Circuit Court of Appeals for the Eighth Circuit found that the employee's claim arose out of the discharge and the employer's conduction of the investigation resulting in such discharge. Consequently, determining the merits of the claim would require an analysis of whether the discharge was warranted under the terms of the CBA.

Moreover, the emotional distress claim in *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057 (9th Cir.1989), was filed by workers who were discharged after an unsuccessful strike. The claim was presumably based upon a "notice of intent to discipline," issued by the employer. The United States Circuit Court of Appeals for the Ninth Circuit observed that the CBA required the employer to notify employees and the union, in writing, of intended disciplinary action. The court concluded, therefore, that any claim based on the notification was inextricably intertwined with the CBA. Likewise, the plaintiff in *Willis v. Reynolds Metals*, 840 F.2d 254 (4th Cir.1988), had been accused of harassing another employee. After receiving the initial complaint, which did not name the plaintiff, the employer conducted an investigation and found evidence implicating the plaintiff. At a meeting between the company's personnel manager and the plaintiff, the plaintiff was accused of responsibility for the harassment. On appeal, the United States Circuit Court of Appeals for the Fourth Circuit found the employee's claim was pre-empted because it "directly dealt with [the employer's] right pursuant to a [CBA] to conduct investigations into possible harassment of one employee by a co-worker and the associated right to confront the suspected employee." *Id.* at 255.

Furthermore, in *Merchant v. CWA*, 145 L.R.R.M. (BNA) 2627, 1993 WL 475480 (E.D.La. 1993), an employee was suspended for three days based upon the employer's determination that the employee had failed to follow safety procedures and was injured as a result. The employee grieved the suspension, and a union agent negotiated a settlement wherein the suspension was modified to a warning and the employee was compensated for lost time. The union agent sent a letter regarding the settlement to the president of the union local, the administrative assistant to the vice-president of the local union district, and to the employer. The United States District Court for the Eastern District of Louisiana found that a determination of whether the union agent's conduct was extreme and outrageous required an analysis of the CBA *since the agent's acts arose out of his representation of the employee in the grievance process.* The court also commented that the grievance process was governed by the CBA, and, thus, the only way to analyze the agent's conduct was to analyze the CBA. Finally, *Crawford v. TRW, Inc.*, 815 F.Supp. 1028 (E.D.Mich.1993), was previously discussed in note 15 *supra*. The *Crawford* court concluded that an employee's emotional distress claim was pre-empted because a determination of whether the employer's action was extreme and outrageous required a determination of whether such action contravened the CBA. As we previously observed, *Crawford*, unlike Greenfield, was directly involved in the grievance which resulted in the notice of which he complained.

**20.** While we conclude that Greenfield's claims are not pre-empted by § 301, we express no opinion regarding the merits of his claims.