**Janet BARBE**

v.

**The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC. and W.E. Zentgraf.**

**Civ. No. PN–88–1316.**

United States District Court, D. Maryland.

Sept. 27, 1989.

Michael Lewis Freilich, Towson, Md., for plaintiff.

Peter F. Healey and R. Stephen Carroll, Reed Smith Shaw & McClay, Washington, D.C., for defendants.

## OPINION AND ORDER

NIEMEYER, District Judge.

This case presents the question whether an employee's state common law actions of defamation and intentional infliction of emotional distress against her employer are preempted by § 301 of the Labor Management Relations Act when the employment relationship is governed by a collective-bargaining agreement.

### I

Janet Barbe, plaintiff, began employment with the defendant, A & P, in 1984 as a bakery clerk. In the spring of 1987, A & P sent Barbe a letter, on the belief that she falsified a worker's compensation claim, that stated, "This is to advise you that effective March 31, 1987, you are terminated for falsification of company document." The letter, which was dated April 7, 1987, was sent by A & P's personnel director Zentgraf to Barbe, to Barbe's two supervisors, and to the local union that represented her for collective-bargaining, United Food and Commercial Workers Union Local 27. A & P contends that it was justified in the termination of Barbe because her conduct amounted to "dishonesty" as that term is used in the collective-bargaining agreement between A & P and Local 27. The agreement provides, "the employer has

the right to discharge or to discipline any employee for good cause, including but not limited to, proven or acknowledged dishonesty ...."

Barbe agrees that the letter was properly sent to her supervisors and that *that* communication of an allegedly defamatory statement was privileged. *See Stevenson v. Baltimore Baseball Club, Inc.*, 250 Md. 482, 243 A.2d 533 (1968). She contends, however, that by sending the letter to the union, A & P published a libelous statement giving rise to her claim for defamation. Barbe concedes that it was the usual practice for the employer to notify the union of employee discipline and agrees that the union would be justifiably upset if it did not receive such notice. She contends, however, that receipt of the letter by the union was not mandated by the collective-bargaining agreement. She argues therefore that whether a claim for defamation has been shown may be determined independently of any interpretation of the collective-bargaining agreement.

Barbe also claims that the sending of the letter gives rise to damages for intentional infliction of emotional distress. She alleges in her complaint that the sending of the letter was "intentional and reckless"; that it was "extreme and outrageous" in light of Barbe's "sensitive nature"; and that it was "the proximate cause of the emotional distress." Again, she contends that this conduct is provable independently of any interpretation of the collective-bargaining agreement.

Following receipt of the termination letter, the union, acting on behalf of Barbe, adjusted the claim and won for her rescission of the letter and obtained for her the option to resign or be given a leave of absence if she were able to present a doctor's statement. Thereafter, Barbe elected to take a six-month leave of absence, which was later extended another six months. She pursued no other remedy and did not pursue the arbitral process that is granted to her under the collective-bargaining agreement. Rather, she elected to file this lawsuit for defamation and intentional infliction of emotional distress.

This action was originally filed in the Circuit Court for Baltimore County. The defendants removed the action to this court, arguing that plaintiff's claims were preempted by § 301(a) of the Labor Management Relations (Taft–Hartley) Act, 29 U.S.C. § 185(a).

Plaintiff, arguing that her claims are not preempted by federal law, has filed a motion to remand the action to state court. Defendants, on the other hand, relying on the fact that plaintiff's claims were properly removed to this court, have filed a motion to dismiss or for summary judgment, based on (1) plaintiff's failure to exhaust her contractual remedies and (2) the running of the applicable statute of limitations for a claim under § 301. Barbe offered no defense on the merits of A & P's motion to dismiss. All parties agree that the controlling issue is whether Barbe's claims are preempted by § 301 of the Labor Management Relations Act.

## II

■ Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

This section not only provides federal jurisdiction over controversies involving collective-bargaining agreements, but also "authorizes federal courts to fashion a body of federal law for the enforcement of these collective-bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). The Supreme Court analyzed § 301's preemptive effect in *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), where the Court stated:

The dimensions of § 301 require the conclusion that substantive principles of fed-

eral labor law must be paramount in the area covered by the statute [so that] . . . issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy.

*Id.* at 103, 82 S.Ct. at 576.

An example of the application of this principle of § 301 preemption is found in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). There, the Court considered whether the Wisconsin state common law cause of action for bad-faith handling of an insurance claim could be applied to the handling of a claim for disability benefits that were authorized by a collective-bargaining agreement. The Court concluded that § 301 preempted the state law cause of action because resolution of the state law claim depended upon an interpretation of the collective-bargaining agreement, an interpretation which, to ensure uniformity, should be made using federal labor law principles. The Court directed the focus of any preemption analysis to the issue "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912.

Following the decision in *Allis–Chalmers,* when applying the standard whether the state tort is "inextricably intertwined" with collective-bargaining agreements, courts have tended from time to time to inquire whether the state court would be "deciding precisely the same issue as would an arbitrator" under the collective-bargaining agreement or whether the decisions by a state court and an arbitrator would "implicate the same analysis of the facts." *See e.g. Lingle v. Norge Div. of Magic Chef, Inc.,* 823 F.2d 1031, 1046 (7th Cir. 1987), *rev'd* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). While a preemption analysis may well focus attention on the same facts to resolve state claims and arbitration claims, that parallelism is not the characteristic that reaches the issue of preemption. Preemption applies if resolution of the state law claim must impact on the proper interpretation of the collective-bargaining agreement so as to put at risk the success of the policy to develop a uni-

form body of federal labor law principles. If a state law remedy can be resolved "independently" of the collective-bargaining agreement, § 301 of the Labor Management Relations Act will not preempt.

To provide a clearer understanding of the proper test, the Supreme Court reviewed *Lingle, supra,* and ruled specifically that:

state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement.

*Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988). This principle, however, is not to be isolated from the holdings in *Allis–Chalmers, supra,* and *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In *Caterpillar,* for example, the Court noted that preemption occurs when "claims [are] founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" 482 U.S. at 394, 107 S.Ct. at 2431, quoting *Electrical Workers v. Hechler,* 481 U.S. 851, 859, n. 3, 107 S.Ct. 2161, 2166, n. 3, 95 L.Ed.2d 791 (1987).

In *Lingel,* an employee brought suit against her employer in state court, alleging retaliatory discharge. The employer removed the action to federal court on the basis of diversity jurisdiction and obtained dismissal on grounds of preemption. The Court of Appeals affirmed dismissal of the complaint, concluding that the state law claim was preempted because both an arbitration and a state-law adjudication of plaintiff's claims would involve "the same analysis of the facts." Rejecting this approach the Supreme Court reversed, stating:

[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without inter-

preting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

108 S.Ct. at 1883.

*Lingle* thus instructs for this case that in order to decide whether plaintiff's claims are preempted by § 301, this Court must determine whether resolution of plaintiff's claims of defamation and intentional infliction of emotional distress require an interpretation of the collective-bargaining agreement.

A similar question was addressed in an analogous context by the Fourth Circuit in *Willis v. Reynolds*, 840 F.2d 254 (4th Cir. 1988), which was decided shortly before *Lingle* was decided by the Supreme Court. A state court action which was brought by an employee against her employer alleging invasion of privacy, slander, and intentional infliction of emotional distress was removed by the employer to federal court where summary judgment was entered for the employer. In deciding on appeal that the claims were preempted by § 301 the Fourth Circuit stated:

> While every assertion of a state court claim does not lead to preemption of jurisdiction, in the instant case the state tort claims being asserted purport to give meaning to the terms of the labor contract.
>
> ... [T]he alleged wrong by [the employer] in the instant case directly dealt with its *right pursuant to a collective bargaining agreement to conduct investigations* into possible harassment of one employee by a co-worker and the associated right to confront the suspected employee. (Emphasis added.)

*Id.* at 255.

This Court believes that the holding and reasoning of *Willis* survive *Lingle* and apply here, even though *Willis* was decided before *Lingle*. The language used by the court in *Willis* demonstrates that the Fourth Circuit based its decision that plaintiff's state law claims were preempted by § 301 on the reason that resolution of the claims required an interpretation of the collective-bargaining agreement. This was the very test established by *Lingle*.

Under a proper preemption analysis, therefore, the first step is to recognize the essential elements of the state law tort claims, in this case defamation and intentional infliction of emotional distress, and against the elements so identified, determine whether the state law claim can be resolved without interpreting or depending on the proper interpretation of the collective-bargaining agreement.

To establish her cause of action for defamation under state law, Barbe must show that the defendants (1) published a false and defamatory statement (2) with knowledge or reckless disregard as to its falsity and defamatory character or negligently failing to ascertain whether it was false or defamatory, (3) which conduct caused damage. *Metromedia, Inc. v. Hillman*, 285 Md. 161, 172, 400 A.2d 1117 (1979); *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 596–97, 350 A.2d 688 (1976); Restatement (Second) of Torts, § 580B (1977). Under certain circumstances a publication may enjoy a privilege that constitutes a defense, such as one made for the protection of the publisher's interest or a common interest. Restatement (Second) of Torts, §§ 594, 596 (1977); *See also Pratt v. Delta Air Lines, Inc.*, 675 F.Supp. 991, 997 (D.Md.1987).

Turning to the facts of this case, Barbe urges that the April 7 letter that was sent by A & P to her containing the statement that she falsified company documents constitutes the basis for the defamatory claim. The publication of the alleged defamatory statement was made when a copy was sent to Local 27. She argues that the proof of this state law tort claim can be made independently of any interpretation of the collective-bargaining agreement between A & P and Local 27 and therefore is not preempted by federal labor law.

The employer contends that resolution of Barbe's defamation claim is "inextricably intertwined" with the interpretation of the collective-bargaining agreement and that therefore the state claim is preempted. It argues that the case is in reality a wrongful discharge claim that is governed by paragraph 4 of the collective-bargaining agreement which provides that employees

may be discharged only for cause, including "dishonesty." It argues that the alleged defamatory statement was a statement of cause provided in compliance with paragraph 4 and therefore requires interpretation of the collective-bargaining agreement. The employer also argues that the publication of the statement to the union was implicitly required by the agreement and whether this notice was required is a question of federal common law. Finally, the employer argues that it was privileged to provide this statement to the union, another issue that it contends requires interpretation of the collective-bargaining agreement.

Although it is true that "dishonesty" as used in the collective-bargaining agreement is a cause for discharge, the term "dishonesty" as used there may have a special contractual meaning and need not have the same meaning or connotation that the term would have when used without reference to the collective-bargaining agreement. The letter of April 7 could be scrutinized under the state common law standard of what is defamatory, irrespective of the definition given to the word "dishonest" as used in the collective-bargaining agreement. Thus, even if the conduct were not to constitute "dishonesty" as the term is used in the collective-bargaining agreement, it still might give rise to a cause of action for defamation. Thus, consideration of that issue might very well pursue an inquiry that is independent of any interpretation of the collective-bargaining agreement. Whether the proper interpretation of "dishonesty" can be made independently of the collective-bargaining agreement, however, need not be resolved because the issues relating to publication and privilege do require interpretation of the collective-bargaining agreement.

Counsel for Barbe conceded at the hearing on these motions that he would expect the union to be notified of employee discipline and that it was the practice for the employer to provide that notice. He also recognized that the union representative might justifiably be upset if he were not notified and that it was in the interest of the employer-union relationship that such notice be provided. He points out, however, that the expressed terms of the agreement do not require notice to the union and therefore the collective-bargaining agreement would not need to be interpreted.

The employer contends that notice to the union of employee discipline that might require union intervention (as was in fact the case here) is an implicit requirement of the collective-bargaining agreement. Such notice gives rise to the first steps of the adjustment and arbitral process that is provided for in the collective-bargaining agreement.

If the employer were to notify only the employee of the termination, the employer would indeed be able to avoid exposure to a claim for defamation. It might, however, expose itself to some claim by the union that the employer is trying to circumvent the adjustment and arbitration process that is provided in the collective-bargaining agreement. On the other hand, if the employer complies with its understanding of the collective-bargaining agreement that notice of employee discipline must be provided to the union, it risks a suit for defamation. Were the Court to rule that the defamatory claim was independently resolvable, it would necessarily be concluding that A & P had no duty to notify the union and would necessarily be making an interpretation of the collective-bargaining agreement contrary to the position taken by the employer. It would be making a determination as to whether the preliminary steps of adjustment and arbitration as described in the collective-bargaining agreement imply a notice requirement and whether the custom of the parties involved is to be inferred as part of the collective-bargaining agreement.

Finally, if the defamation claim were not preempted, the state court would be called upon to determine whether the letter to the union was privileged, since that is a defense that has been advanced by the employer. In order to resolve the privilege defense, the state court would have to determine the relative interests of the union, the employer and the employee in such a communication. By permitting a state

court to make a ruling of this type would violate the policy of having the federal courts develop a uniform body of federal labor law as it applies to collective-bargaining agreements and would therefore undermine the philosophy that gives rise to the preemption doctrine.

The Court accordingly concludes that two issues in the defamation suit, i.e. publication and the defense of privilege, require interpretation of the collective-bargaining agreement, and their resolution is "dependent on analysis of a collective-bargaining agreement." *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2431. The resolution of the elements of the state law claim are thus inextricably intertwined with the definition of the adjustment and arbitration process contained in the collective-bargaining agreement and with an understanding of the relative interests of the union, the employer and the employee in communicating employee discipline actions. The defamation claim is therefore preempted under § 301 of the Labor Management Relations Act of 1947 and the principles of *Lingle, Allis–Chalmers,* and *Willis.*

The other state common law claim asserted is based on the allegations that A & P intentionally inflicted emotional distress on Barbe by sending the April 7 letter. To establish a claim for intentional infliction of emotional distress, the plaintiff must show (1) that the conduct was intentional or reckless; (2) that it was extreme and outrageous; (3) that the wrongful conduct caused emotional distress; and (4) that the emotional distress was severe. *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611 (1977).

Whether the notice of termination for "dishonesty" was reckless, extreme or outrageous will depend on whether Barbe's conduct was in violation of the agreement relied upon as the basis for the termination. If A & P complied with and satisfied the terms of the agreement, then Barbe would be hard-pressed to urge that the conduct was outrageous. *See Douglas v. American Information Technologies Corp.,* 877 F.2d 565, 571–72 (7th Cir.1989). Similarly, state law recognizes that conduct

which otherwise may give rise to this tort may be privileged if it is shown that the purported tortfeasor is insisting on his legal rights. Quoting with approval from the Restatement (Second) of Torts, the Court of Appeals of Maryland in *Young v. Hartford Accident & Indem.,* 303 Md. 182, 197, 492 A.2d 1270 (1985), stated:

> The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

A & P maintains that its sending of the April 7 letter was a permissible exercise of its termination rights under the collective-bargaining agreement with Local 27. Whether it is correct in that contention would require the Court to interpret the collective-bargaining agreement to determine whether A & P had the legal rights that it claimed.

For the foregoing reasons the Court holds that Barbe's claim for intentional infliction of emotional distress is preempted by § 301 of the Labor Management Relations Act.

Advancing other bases for avoiding preemption and obtaining a remand, plaintiff has cited *Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), and *Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). These cases, however, dealt with different criteria for preemption pursuant to §§ 7 and 8 of the National Labor Relations Act, as articulated in *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and therefore are unpersuasive in the instant case. *See Willis v. Reynolds Metals Co.,* 840 F.2d 254 (4th Cir.1988). *See also Lingle,* 108 S.Ct. at 1883 n. 8 ("*[O]ther* federal labor law principles may preempt state law." (Emphasis added.))

Because plaintiff's claims of defamation and intentional infliction of emotional distress are preempted by federal labor law,

they were properly removed to this Court by defendants pursuant to 28 U.S.C. § 1441(a). The Court will therefore deny plaintiff's motion to remand.

## III

 Defendants have moved for dismissal of the complaint or for summary judgment, arguing that plaintiff has not satisfied the prerequisites of a § 301 claim. Because defendants' motion makes reference to exhibits from its Petition for Removal, this Court will treat the motion as one for summary judgment. *See* Rule 12(b), F.R.Civ.P.

Before a plaintiff may maintain a suit against his employer under § 301, he must attempt to exhaust any exclusive grievance and arbitration procedures established by the collective-bargaining agreement. *See, e.g., Clayton v. International Union, UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). Article 10 of the collective-bargaining agreement involved in this case establishes such an arbitration procedure. On April 13, 1987, plaintiff's bargaining agent, United Food and Commercial Workers Union Local 27, sent A & P a grievance notice disputing plaintiff's termination. In response, A & P sent plaintiff a letter dated April 14, 1987, informing her that the termination letter of April 7 had been rescinded and that her record would indicate that she voluntarily resigned. Neither plaintiff nor Local 27 sought further adjustment of the grievance. If plaintiff was dissatisfied with the resolution of her grievance, it was incumbent upon her to exhaust her contractual remedies by pursuing arbitration as provided in the collective-bargaining agreement.

Another prerequisite of a § 301 claim is that it be brought within six months after the cause of action accrued. *See, e.g., Del-Costello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Kirby v. Allegheny Beverage Corp.,* 811 F.2d 253, 256 (4th Cir.1987). The complaint in this case was filed about one year after the actions complained of occurred, some six months after the running of the applicable statute of limitations.

Because plaintiff failed to exhaust her contractual remedies before bringing her claim and failed to file her claims within six months of the time the action complained of occurred, defendants' motion for summary judgment will be granted.

For the foregoing reasons, it is ORDERED this 27th day of September, 1989, by the United States District Court for the District of Maryland, that:

1. The motion of the plaintiff to remand this case to the state court is denied;

2. The motion of the defendants for summary judgment is granted and judgment is hereby entered in favor of defendants and against plaintiff, with costs to abide.