Ahmed ALI

v.

GIANT FOOD LLC/STOP AND SHOP SUPERMARKET COMPANY, LLC, et al.

Civil Action No. DKC 2008–2117.

United States District Court, D. Maryland.

Jan. 12, 2009.

Donnell H. McNeal, Law Office of Donnell H. McNeal, Clarksville, MD, for Ahmed Ali.

Eric J. Janson, Seyfarth Shaw LLP, Washington, DC, for Giant Food LLC/ Stop and Shop Supermarket Company, LLC, et al.

## MEMORANDUM OPINION

DEBORAH K. CHASANOW, District Judge.

Presently pending and ready for resolution in this defamation action is a motion to dismiss filed by Defendants Giant Food, LLC ("Giant") and Thomas Saunders ("Saunders") (Paper 10), and a "second" motion to remand filed by Plaintiff Ahmed Ali ("Ali") (Paper 15)[1]. The issues are fully briefed and the court now rules pursuant to Local Rule 105. 6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's second motion to remand will be denied and Defendants' motion to dismiss will be denied in part and granted in part.

## I. Background

Plaintiff, a former Giant employee, filed an action in the Circuit Court for Montgomery County, Maryland on July 27, 2008. Plaintiff alleges that he was defamed by Defendant Thomas Saunders, Giant loss control manager, during an investigation into a theft that Plaintiff allegedly committed on February 11, 2008 while employed at Giant store # 152. Plaintiff alleges that Mr. Saunders "knowingly communicated and otherwise published such false and defamatory comments about the Plaintiff stealing and/or otherwise embezzling company property/merchandise to the management staff at [Giant] store # 152...." (Paper 1, ¶ 49). Plaintiff further alleges that as a result of Defendants' conduct, he was terminated from both Gi-

ant and another job with Edy's Grand Ice Cream ("Edy's"), and suffered economic and emotional damages. (*Id.* ¶ 50).

Defendants removed the action to this court, asserting federal preemption based on § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Defendants then moved to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). Plaintiff moved to remand, arguing that removal to federal court was improper because his defamation claim does not trigger any federal question and is not otherwise preempted by federal law.

## II. Motion to Remand

### A. Standard of Review

It is well-settled that the removing party bears the burden of proving proper removal. *Greer v. Crown Title Corp.*, 216 F.Supp.2d 519 (D.Md.2002)(*citing Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court," indicative of the reluctance of federal courts "to interfere with matters properly before a state court." *Richardson v. Phillip Morris Inc.*, 950 F.Supp. 700, 701–02 (D.Md.1997)(internal quotation marks omitted); *see also Mulcahey*, 29 F.3d at 151.

### B. Analysis

A United States district court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Removal jurisdiction is proper only if the action originally could have

---

1. Plaintiff included the first request for remand in his opposition to the motion to dismiss. (Paper 11).

been brought in the district court. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Caudill v. Blue Cross & Blue Shield of N.C.,* 999 F.2d 74 (4th Cir.1993). Generally, whether any of the plaintiff's claims "arise under" federal law is determined by the application of the well-pleaded complaint rule. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The rule provides that a state court claim may be removed to federal district court if it presents a federal question which appears on the face of the plaintiff's well-pleaded complaint. *Caterpillar,* 482 U.S. at 391, 107 S.Ct. 2425. There are two exceptions to the general rule: (1) where the "complete preemption doctrine" applies; and (2) where the vindication of a right under state law necessarily turns on some construction of federal law. *Kight v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.,* 34 F.Supp.2d 334, 337 (E.D.Va.1999).

Defendants assert that this action was properly removed because Plaintiff's defamation claim is completely preempted by § 301 of the LMRA. Thus, Defendants argue that this court has original jurisdiction over Plaintiff's claim. In his motion for remand, Plaintiff asserts that removal was improper under both 28 U.S.C. § 1441, § 1446(c)(4), and because his defamation claim is not preempted by § 301 of the LMRA.

 Section 301 of the LMRA, 29 U.S.C. § 185(a) provides, in relevant part:

Suits for violation of contracts between employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

It is settled law that any claims that require the interpretation of a collective bargaining agreement ("CBA") are completely preempted by § 301 of the LMRA. "A state law claim is preempted when resolution of the claim 'requires the interpretation of a collective-bargaining agreement,' *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), or is 'inextricably intertwined with consideration of the terms of the labor contract.' " *Foy v. Giant Food Inc.,* 298 F.3d 284, 287 (4th Cir.2002)(*quoting Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)); *see also IBEW, AFL–CIO v. Hechler,* 481 U.S. 851, 863 n. 5, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)(noting that a state law claim is preempted when "[t]he nature and scope of the duty of care owed Plaintiff is determined by reference to the collective bargaining agreement"). "[R]egardless of how a plaintiff may label his claim, it is construed as a claim brought pursuant to § 301 of the LMRA and is properly removed." *Taylor v. Giant Food,* 438 F.Supp.2d 576, 581 (D.Md.2006)(*citing Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 559–60, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *McCormick v. AT & T Techs., Inc.,* 934 F.2d 531, 534 (4th Cir.1991), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992)).

"[T]he question in preemption analysis is not whether the source of a cause of action is state law, but whether resolution of the cause of action requires interpretation of the collective bargaining agreement." *McCormick,* 934 F.2d at 535. Therefore, "[u]nder a proper preemption analysis ... the first step is to recognize the essential elements of the state law claims ... and against the elements so identified, deter-

mine whether the state law claim can be resolved without interpreting or depending on the proper interpretation of the collective-bargaining agreement." *Barbe v. Great Atl. & Pac. Tea Co., Inc.*, 722 F.Supp. 1257, 1260 (D.Md.1989).

■ Here, to state a claim for defamation under Maryland law, Plaintiff must show that Defendants: (1) published a defamatory statement to a third person; (2) the statement was false; (3) Defendants were legally at fault for making the statement; and (4) Plaintiff suffered harm. *Woodruff v. Trepel*, 125 Md.App. 381, 391, 725 A.2d 612 (1999). "To prevail in an action under § 301 against either the employer or the union, an employee must ordinarily establish both that the union breached its duty of fair representation and that the employer breached the collective-bargaining agreement." *Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 451 U.S. 679, 683 n. 4, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

Defendants contend that Plaintiff's defamation claim is "inextricably tied" with management's rights and obligations under the CBA and is substantially dependent upon the interpretation and analysis of the CBA. Defendants assert that the court will need to determine whether Defendants had the right to conduct an investigation into the alleged theft and to "publish" the findings to Giant management. (Paper 10, at 6). Specifically, Defendants argue that under Article 2.1 of the CBA, Giant has the "authority and responsibility for management of the business, including ... direction and control of the work force." (*Id.* at 7). Defendants further argue that it has the right, under Article 10.2 of the CBA, to discipline and discharge employees only "for good cause, including proven dishonesty." (*Id.*). Defendants maintain that the CBA not only permits management to set certain rules and policies to direct and control employees, but implicitly requires that management conduct an investigation into any misconduct that might warrant discipline or discharge to determine whether there is "good cause." (*Id.*).

Plaintiff erroneously cites *Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), to support his contention that the defamation claim is not preempted. (Paper 15, at 2). In the context of a § 301 case, the test set forth in *Allis–Chalmers* applies. *See Willis v. Reynolds Metals Co.*, 840 F.2d 254, 255 (4th Cir.1988). Thus, the inquiry is, as noted above, whether evaluation of the state tort action is inextricably intertwined with the CBA. *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904. Defendants point out two particularly instructive cases where a former employee's slander and defamation claims were held preempted by the LMRA under the test set forth in *Allis–Chalmers*.

In *Willis*, Willis filed a slander claim against her former employer, Reynolds Metals. Willis alleged that her employer slandered her by informing the personnel manager and union representative that Willis was allegedly harassing her co-workers. The United States Court of Appeals for the Fourth Circuit rejected Willis's claims, affirming the district court's decision that the state tort causes of action were preempted by § 301 of the LMRA. The court reasoned that it was "clear that the employer's acts had merely been in exercise of its right to control conditions in the working place." *Id.* at 254. Willis's state tort claims were preempted because they "purport[ed] to give meaning to the terms of the labor contract." *Willis*, 840 F.2d at 255.

In *Barbe v. The Great Atl. & Pac. Tea Co., Inc.*, 722 F.Supp. 1257 (D.Md.1989),

the court followed the reasoning of *Willis* when confronted with a defamation claim brought against the Plaintiff's former employer. Barbe alleged that her former employer defamed her by sending a termination letter to the personnel director, two of her supervisors, and the local union stating that Barbe was terminated for falsifying a worker's compensation claim. The court held that Barbe's claim was preempted by § 301 of the LMRA, noting that resolution of the defamation claim would require interpretation of the CBA. Notably, the CBA in *Barbe* included a provision nearly identical to Article 10.2 of the CBA in the current case, namely, that the employer had a right to discipline or discharge any employee for good cause, including proven dishonesty. *Barbe,* 722 F.Supp. at 1257–58; Paper 10, Ex. 1, at 15. The court determined that "[t]he resolution of the elements of the state law claim are ... inextricably intertwined with ... the collective-bargaining agreement and with an understanding of the relative interests of the union, the employer and the employee in communicating employee discipline actions." *Barbe,* 722 F.Supp. at 1262.

The facts here are analogous to both *Willis* and *Barbe.* To the extent that Plaintiff claims that he was defamed when Mr. Saunders made false statements to Giant management, that his firing based on those statements, and Giant's investigation was wrongful, a court must interpret the CBA in order to determine the nature and extent of Giant's ability to investigate and discuss suspected employee theft and to fire someone based on those actions. Defendant Saunders "published" allegedly defamatory statements to management during the course of investigating an alleged theft committed by Plaintiff. Plaintiff does not clearly allege which state-

ments were defamatory, whether Mr. Saunders was the source of the statements, or whether Mr. Saunders was repeating information gathered during the course of the investigation. Nonetheless, a determination of whether Mr. Saunders was allowed to discuss the alleged theft with management, what Mr. Saunders was allowed to say, and the extent to which Defendants were allowed to conduct an investigation and to fire Plaintiff are governed by the CBA. Furthermore, an allegation of wrongful conduct, namely that Mr. Saunders' statements to management were false and that Mr. Saunders should not have talked to management, are necessary elements in Plaintiff's defamation claim (e.g., falsity and publication) which are controlled by the CBA. As the Fourth Circuit noted in *McCormick,*

> [t]he rightness or wrongness of the action has not been committed to the common law of tort, but to the legal arrangements embodied in a contractual agreement, in this case through collective bargaining. State tort claims are preempted where reference to a collective bargaining agreement is necessary to determine whether a "duty of care" exists or to define "the nature and scope of that duty, that is, whether, and to what extent, the [employer's] duty extended to the particular responsibilities alleged by [the employee] in h[is] complaint."

*Id.* at 536 (alteration in original)(*quoting IBEW, AFL–CIO v. Hechler,* 481 U.S. 851, 862, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)). Therefore, because Plaintiff's defamation claim requires interpretation of the CBA, it is completely preempted by § 301 of the LMRA and was properly removed from state court.[2] Accordingly, the motion to remand will be denied.

**2.** To the extent that Plaintiff's defamation claim relies on the events surrounding his

### III. Motion to Dismiss

#### A. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 n. 3, 167 L.Ed.2d 929 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.1999)(*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v.*

*Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979). In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (internal citations omitted).

Although the court is relying on the CBA, a document outside of the pleadings, it is unnecessary to convert Defendants' motion to dismiss into a motion for summary judgment. "While the well-pleaded complaint rule in general forecloses looking beyond the allegations of the complaint for a federal question to confer jurisdiction, there is an exception for situations where the complaint asserted can be resolved only by referring to the terms of the collective bargaining agreement." *Willis v. Reynolds Metals Co.*, 840 F.2d 254, 255 (4th Cir.1988)(citing cases). Under this exception, the court may examine the CBA to determine whether dismissal is proper.

#### B. Analysis

#### 1. Defendant Saunders

■ For reasons explained above, Plaintiff's defamation claim is completely preempted by the LMRA. "[T]he Supreme Court has refused to allow artful pleading to circumvent the power of § 301's preemptive force." *Davis v. Bell Atlantic–West Virginia, Inc.*, 110 F.3d 245, 247

---

employment at Edy's, the complaint does not state a claim. Plaintiff alleges that **he** told Tim Wise, distribution and grocery manager for Edy's, that he was "unable to service Giant Store # 152 because of a misunderstanding and disagreement." (Paper 1, ¶ 43). In a defamation action, the *defendant* must publish the alleged defamatory statements to

a third party. *Woodruff*, 125 Md.App. at 391, 725 A.2d 612. Plaintiff cannot base his defamation claim on statements that he published himself. Therefore, Plaintiff's assertion that Defendants defamed him to Mr. Wise and are thereby responsible for his termination from Edy's must fail.

(4th Cir.1997). Therefore, Plaintiff's defamation claim is recrafted into a § 301 claim under the LMRA. As such, Plaintiff is precluded from bringing the § 301 claim against Mr. Saunders, an individual employee. "The law is well settled that individual employees are not proper parties to a suit brought under § 301." *Jackson v. Kimel,* 992 F.2d 1318, 1325 n. 4 (4th Cir. 1993) (*quoting Loss v. Blankenship,* 673 F.2d 942, 946–47 (7th Cir.1982)). Mr. Saunders "is not a signatory to the collective bargaining agreement and cannot be sued for violation of the collective bargaining agreement except as an agent of [the employer]." *Kimel,* 992 F.2d at 1325 n. 4. Accordingly, Plaintiff's claim against Defendant Saunders will be dismissed.

### 2. Defendant Giant

Defendants assert that even if Plaintiff properly brought his claim under § 301, his claim is now barred for failure to exhaust the grievance and arbitration procedures set forth in the CBA. (Paper 10, at 11).

Courts have analyzed motions to dismiss for failure to meet the exhaustion requirement under Fed.R.Civ.P. 12(b)(1) (subject matter jurisdiction) and Fed.R.Civ.P. 12(b)(6)(failure to state a claim).[3] Indeed, one court has noted:

> [i]t is not clear whether the absence of this prerequisite should be characterized as a lack of subject matter jurisdiction or as a failure to state a claim upon which relief can be granted. It could be the former because § 301 is the basis of federal court jurisdiction in breach of labor contract cases. It could also be

the latter because the claim does not lie unless this prerequisite is satisfied.

*Painters Dist. Council No. 2 v. Stripers, Inc.,* 582 F.Supp. 860, 863 (D.Mo.1984).

In this case, the result will be the same whether analyzed under 12(b)(1) or (b)(6). Plaintiff has properly alleged facts to demonstrate that his claim should not be dismissed for failure to exhaust the grievance and arbitration procedure sufficient to survive either type of challenge.

 "It is a well-established principle of labor law that a union and its members must exhaust the remedies provided in their collective bargaining agreement with the employer before they seek judicial intervention." *Nat. Post Office Mail Handlers Local No. 305, LIUNA, AFL–CIO v. U.S. Postal Serv.,* 594 F.2d 988, 991 (4th Cir.1979)(*citing Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–653, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)). "The requirement of exhaustion of contractual remedies is not, however, inflexible." *Id.* Exhaustion of grievance and arbitration procedures is not required where (1) the employer repudiates the grievance procedures mandated by the collective-bargaining agreement; (2) the union wrongfully refuses to process the grievance; or (3) resort to the contractual remedy would be wholly futile. *See Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 330, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "An employee and the union acting in his behalf need only '[a]ttempt' to use the remedy provided by the contract." *Nat. Post Office,* 594 F.2d

---

**3.** *See, e.g., Atchley v. Heritage Cable Vision Assocs.,* 926 F.Supp. 1381, 1385 (N.D.Ind. 1996), *aff'd* 101 F.3d 495 (7th Cir.1996)(dismissing for failure to state a claim); *Farkas v. Ellis,* 780 F.Supp. 1013 (D.N.Y.1992)(dismissing for lack of subject matter jurisdiction); *Muday v. Cleaver,* 590 F.Supp. 1209, 1210

(D.Mich.1984)(dismissing on ripeness grounds); *McLean v. U.S. Postal Serv.,* 544 F.Supp. 821, 827 (D.Pa.1982)("Plaintiff has failed to exhaust his contractual remedies ... and therefore is not properly before this court").

at 991 (*quoting Rep. Steel Corp.*, 379 U.S. at 652, 85 S.Ct. 614)(noting that the language of the LMRA is nearly identical to the Postal Reorganization Act of 1970, 39 U.S.C. § 1208(b), and applying the same analysis).

Article 21 of the CBA sets forth the grievance and arbitration procedures. Article 21.5 provides that "[a]ll complaints must be filed in writing thirty (30) days after occurrence of the matter in dispute or disagreement, provided that any complaints in reference to dismissal must be filed, in writing, to the Employer within in ten (10) days from the date of dismissal." Upon receipt of a complaint, "the representative of the Employer and the representative of the Union shall, within three (3) days, commence discussion in an attempt to reach a settlement of the controversy. Art. 21.2. If the matter is not settled under Article 21.2, then either party may bring their dispute to arbitration. Art. 21.3. Defendants assert that the grievance procedure includes two meetings before arbitration can be invoked. The first meeting is with the grievant and representatives from the union representative and Human Resources. The second meeting includes the grievant, the director of Human Resources, and a higher level union official. (Paper 10, at 12 n. 2). Defendants maintain that on February 26, 2008, Plaintiff was informed of his suspension and termination, but did not pursue his grievance any further. (Paper 10, at 12).

Plaintiff alleges the following in his complaint. On February 11, 2008, Plaintiff used a personal savings coupon to obtain 5 cans of tuna free of charge. On February 12, Plaintiff was summoned to a meeting with the store manager, Ali Bradley, front end manager, Angela Mattox, and Mr. Saunders. Mr. Saunders questioned Plaintiff about the cans of tuna, cheese, and the personal savings coupon. Plaintiff admitted using his coupon for the tuna, but denied purchasing any cheese. Mr. Saunders stated that a camera recorded the entire transaction and showed Plaintiff purchasing both tuna and cheese. When Mr. Sanders finished questioning Plaintiff, Plaintiff wrote a statement regarding the February 11 purchase. Mr. Bradley then informed Plaintiff that he was suspended indefinitely until loss prevention completed the investigation.

On February 13, 2008, Plaintiff went to his full-time job with Edy's, where his duties include delivering products to Giant Store # 152. When Mr. Bradley noticed Plaintiff servicing Store # 152, he informed Plaintiff that he could not enter the store until the loss prevention investigation was over and instructed Plaintiff to leave. Upon leaving, Plaintiff contacted his UFCW, Local 400 representative, Yolanda Anwar. (Paper 1, ¶ 21). On February 26, 2008, he met with Ms. Anwar, Mr. Bradley, Mr. Saunders, and Jodi Kans of Giant Human Resources. (*Id.* ¶ 24). Ms. Kans advised Plaintiff that the cashier who processed the alleged theft, Bleck Ngwafang, stated that he gave Plaintiff $180.00 worth of food because Plaintiff threatened his life. Plaintiff requested to see the videotape that recorded the transaction, but Ms. Kans and Mr. Saunders refused.

Following the February 26 meeting, Plaintiff called Ms. Anwar on March 7, 18, and 19, 2008 to discuss the status of his case. (*See* Paper 1, ¶¶ 28, 30). Ms. Anwar returned Plaintiff's calls on March 20 and advised him that Giant terminated his employment. Plaintiff again requested to view the videotape of the alleged theft and also asked to see a statement submitted by an employee in the service deli stating that Plaintiff was given cheese. (*Id.* ¶ 30–31). Ms. Anwar told Plaintiff to follow up with Ms. Kans.

After Plaintiff did not receive any formal letter of termination or a "solid reason" for suspension, he returned to work at Giant store # 152 on March 24, 2008. (*Id.* ¶ 32). Within an hour of Plaintiff's arrival for work, Mr. Bradley informed him that he was terminated. (*Id.* ¶ 34). Plaintiff claims that Mr. Bradley advised Plaintiff that Ms. Kans said there was supposed to be another grievance meeting with Ms. Anwar, but Ms. Anwar had not contacted Ms. Kans. (*Id.*). Plaintiff then asked Mr. Bradley for documentation giving the reason for his termination, including the security tape from February 11, 2008, but was told to call Lisa Martignetti of Giant. (*Id.* ¶ 37).

On March 14, 2008, Plaintiff received a letter stating that his health insurance was cancelled as a result of his termination from Giant. (*Id.* ¶ 38). On March 26, 2008, Plaintiff received a letter from Ms. Martignetti stating that he had been terminated on February 13, 2008. On April 1, 2008, he sent a letter to Ms. Martignetti requesting the reasons for his termination and who terminated him. (*Id.* ¶ 40). On April 16, 2008, Ashlye Cheschi, a paralegal at Giant, sent Plaintiff his employee file and a letter stating that he was terminated for violating company policy on February 13, 2008. (*Id.* ¶ 41). On April 24, 2008, Plaintiff received a letter from M.C. James Lowthers of UFCW, Local 400 acknowledging receipt of Plaintiff's April 14, 2008 letter requesting a copy of Plaintiff's employee file. (*Id.* ¶ 42). Mr. Lowthers advised Plaintiff that the matter was passed on to Mike Earman for further action. (*Id.*). Mr. Lowthers never called Plaintiff again.

■ Plaintiff has sufficiently alleged that he attempted to comply with the grievance procedures set forth in the CBA to no avail and that continued pursuit of the procedures in the CBA would be futile.

After receiving formal notification of his termination, Plaintiff alleges that he attempted to proceed with his grievance, wrote letters and made phone calls indicating his desire to do so, and that either Giant, the Union, or both did not cooperate. Here, "[f]urther exhaustion manifestly would be ineffective." *Nat. Post Office*, 594 F.2d at 992. "Where contractual remedies are unsatisfactory or unworkable by reason of misconduct of the employer or of the union, exhaustion of those remedies is unnecessary." *Id.* at 991 (*citing Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). Accordingly, the complaint will not be dismissed against Defendant Giant.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part and Plaintiff's motion to remand will be denied. A separate Order will follow.